521 So.2d 199 (1988)
Robert WEBB and Carol Webb, Appellants,
v.
The HILLSBOROUGH COUNTY HOSPITAL AUTHORITY, Operating Tampa General Hospital, Hillsborough County, Florida, Appellee.
No. 87-691.
District Court of Appeal of Florida, Second District.
February 12, 1988.
*200 Francis J. Carroll, Jr., Chobee Ebbets of Smalbein, Eubank, Johnson, Rosier & Bussey, P.A., Daytona Beach, for appellants.
Michelle G. Castillo of Marvin Solomon, P.A., Tampa, for appellee.
LEHAN, Judge.
A husband appeals from a final judgment which, under the common law doctrine of necessaries, held him responsible for a hospital bill representing necessary services rendered to his wife. The husband cites Shands Teaching Hospital & Clinics, Inc. v. Smith, 497 So.2d 644 (Fla. 1986), in which the Florida Supreme Court, deciding that constitutional equal protection of the law was not in issue in that case, held that the common law imposes no responsibility upon a wife for necessaries provided to her husband. The husband in this case contends that, there having been no agreement by him to be responsible for necessaries provided to his wife, he is not responsible therefor because to hold him so responsible would, in light of the Shands holding, violate his right to equal protection *201 of the law under the Florida and federal constitutions.[1]
We agree with the husband that equal protection requires that husbands and wives not be treated differently with respect to the responsibility of one spouse for necessaries provided to the other spouse. But we disagree that a husband may not be responsible for necessaries provided to his wife. The reason is that in this equal protection case we conclude that a wife may be responsible for necessaries provided to her husband. Yet since we also conclude that one spouse may not be responsible for necessaries provided to the other spouse unless the other spouse is unable to pay therefor, and since the record does not show whether or not the wife in this case had that ability, we remand for further proceedings. We now explain our reasoning.
We are constrained to apply the United States Supreme Court's rationale in Orr v. Orr, 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979). Orr held that a statute authorizing alimony to be paid by husbands but not by wives violates the equal protection clause of the United States Constitution. That rationale was that
the "old notio[n]" that "generally it is the man's primary responsibility to provide a home and its essentials," can no longer justify a statute that discriminates on the basis of gender. "No longer is the female destined solely for the home and the rearing of the family, and only the male for the marketplace and the world of ideas."
440 U.S. at 279-80, 99 S.Ct. at 1112, 59 L.Ed.2d at 319, quoting Stanton v. Stanton, 421 U.S. 7, 14-15, 95 S.Ct. 1373, 1378, 43 L.Ed.2d 688 at 695 (1975).
We apply that rationale notwithstanding our recognition of what the Wisconsin Supreme Court has referred to as the "verifiable fact that wives are still far from equal with their husbands in economic resources." Marshfield Clinic v. Discher, 105 Wis.2d 506, 314 N.W.2d 326, 331 (1982). The United States Supreme Court has set the requisite pattern for change in this regard to be implemented through constitutional interpretation.[2]
That a statute caused the unequal protection described in Orr and that the common law does so in this case is a distinction without a material difference. In either case it is the law which does so. See Jersey Shore Medical Center-Fitkin Hospital v. Estate of Baum, 84 N.J. 137, 417 A.2d 1003, 1007 (1980).
See also Wengler v. Druggists Mutual Insurance Co., 446 U.S. 142, 100 S.Ct. 1540, 64 L.Ed.2d 107 (1980) (statute providing work-related death benefits to widow without requiring proof of her dependency on husband but requiring proof from a widower of his dependency on wife violates equal protection); Califano v. Westcott, *202 443 U.S. 76, 99 S.Ct. 2655, 61 L.Ed.2d 382 (1979) (social security law providing aid to families with dependent children when husband becomes unemployed, but not when wife becomes unemployed, violates right to equal protection); Califano v. Goldfarb, 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977) (social security provision allowing survivor's benefits to widower only if he was receiving at least half of his support from his wife violates right to equal protection); Craig v. Boren, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1977) (law prohibiting beer sales to males under 21 and females under 18 violates right to equal protection); Stanton (law setting age of majority of women at 18 and men at 21 violates right to equal protection); Weinberger v. Wiesenfeld, 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975) (social security law providing that survivors' benefits based on deceased husband's earnings are payable to wife and children but benefits based on deceased wife's earnings are payable only to children violates right to equal protection); Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973) (requirement that a wife must show that her husband is actually dependent to claim him as a dependent for purposes of armed forces benefits without a reciprocal requirement on the husband violates right to equal protection); Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971) (statute giving preference to men as administrators of estates violates right to equal protection). But see Marshfield Clinic (no violation of equal protection from a husband being primarily liable for necessaries provided to both the husband and his wife and a wife being only secondarily liable in the event the husband is unable to pay).
Accordingly, we hold that for a husband to be responsible for necessaries provided to his wife while his wife is not responsible for necessaries provided to her husband would violate the equal protection clause of the United States Constitution. This was the conclusion of the Virginia Supreme Court in Schilling v. Bedford County Memorial Hospital, Inc., 225 Va. 539, 303 S.E.2d 905 (1983), which on equal protection grounds held that a husband was not responsible for his wife's hospital bill because at common law wives do not have a reciprocal responsibility. Schilling, by holding the husband not responsible, in effect abolished Virginia's common law doctrine of necessaries and said that whether or not both spouses should be responsible for necessaries provided to each was best left to the legislature. Id. 303 S.E.2d at 908. In Jersey Shore the New Jersey Supreme Court also reached the conclusion on equal protection grounds that husbands and wives may not be treated differently with respect to the responsibility of one for necessaries provided to the other. However, in that case a husband was held responsible for his wife's hospital bill because the New Jersey court changed the common law so that a wife has a reciprocal responsibility in that regard. See also Justice Abrahamson's dissent in Marshfield Clinic, 314 N.W.2d at 332-39.
Having held that husbands and wives cannot constitutionally be treated differently in the context of this case, the issue for us remains how they are both to be treated. The choice of the two changes of law is for both husband and wife to be responsible for necessaries provided to each, as in Jersey Shore, or for neither to be responsible for necessaries provided to the other, as in Schilling.
We make that choice by further holding that, as a general rule, both husband and wife are responsible for necessaries provided to each. This was the result reached not only in Jersey Shore but also in a different procedural context by this court in Manatee Convalescent Center, Inc. v. McDonald, 392 So.2d 1356 (Fla. 2d DCA 1980), and by the Third District Court of Appeal in Parkway General Hospital, Inc. v. Stern, 400 So.2d 166 (Fla. 3d DCA 1981). Manatee, which Parkway followed, cited Jersey Shore as principal authority. 392 So.2d at 1358.
Manatee and Parkway changed the common law with respect to necessaries so that both husband and wife would be responsible for necessaries provided to each. While Manatee and Parkway were disapproved by the Florida Supreme Court in *203 Shands, the bases for such disapprovals were, explicitly or implicitly, that (a) the matter of changing the common law regarding the liability of one spouse for necessaries provided to the other spouse was best left to the legislature and (b) that, while equal protection issues are for the courts to decide, equal protection is not in issue in cases like Manatee and Parkway in which hospitals claim that wives are responsible for necessaries provided to their husbands because hospitals do not have standing to raise equal protection as between husbands and wives. 497 So.2d at 646. Thus, the issue in the case now before us was not in issue in Shands. As the Florida Supreme Court said, "The issue of whether it is a denial of equal protection to hold a husband liable for a wife's necessaries when a wife is not liable for a husband's necessaries is not before us." Id. at 646 n. 1.
The underlying rationale of Manatee and Parkway was essentially the same as the United States Supreme Court's equal protection rationale quoted above which we are applying here and which was applied in Jersey Shore, 417 A.2d at 1009. As Manatee said, "Changing times demand reexamination of seemingly unchangeable legal dogma. Equality under law and even handed treatment of the sexes in the modern market place must also carry the burden of responsibility which goes with the benefits." 392 So.2d at 1358. In fact, Schilling, an equal protection case, cited Manatee as having made a choice different from that made in Schilling. 303 S.E.2d at 908 n. 3.[3]
Thus, Manatee and Parkway were decided essentially on the basis of a rationale involving equal protection which the Florida Supreme Court in Shands said was not in issue in those kinds of cases (only because hospitals lacked standing to raise it) but which is in issue in this case (because the husband raised it). This case is basically the same kind of case as were Manatee and Parkway from the standpoint of the responsibility of each spouse for the hospital bills of the other. Therefore, notwithstanding the Florida Supreme Court's disapproval of those cases, they provide nondisapproved additional support for our holding in this case.
The rationale for our further holding that, in general, both husband and wife are responsible for necessaries provided to each, rather than neither being responsible for necessaries provided to the other, is the same as that of Manatee, Parkway, and Jersey Shore. Jersey Shore expressed the rationale as follows:
The appropriate result concerning the liability for necessaries follows from our view that "marriage is a shared enterprise, a joint undertaking, that in many ways ... is akin to a partnership." We hold that both spouses are liable for the necessary expenses incurred by either spouse. In a viable marriage, the marital partners can decide between themselves how to pay their debts. A creditor providing necessaries to one spouse can assume that the financial resources of both spouses are available for payment.
The reasonable expectations of marital partners are that their income and assets are held for the benefit of the marital partnership and, incidentally, for creditors who provide necessaries for either spouse.
417 A.2d at 1010 (citation omitted). See also, e.g., Chesnut v. Chesnut, 160 Fla. 83, 33 So.2d 730, 731 (1948) ("marriage is a partnership"); Brown v. Brown, 300 So.2d 719, 724 n. 6 (Fla. 1st DCA 1974) (quoting Chesnut), cert. dismissed, 307 So.2d 186 (1975); Thigpen v. Thigpen, 277 So.2d 583, 585 (Fla. 1st DCA 1973) ("both parties [are] partners sharing equal rights and obligations ..."). As Justice Terrell, quoted in Manatee, said in 1942, "In the marital state, husband and wife are partners... ." 392 So.2d at 1358 (quoting Merchant's Hostess Service of Florida, Inc. v. Cain, 151 Fla. 253, 9 So.2d 373, 375 (1942)). If *204 we were to now announce that in the context of this case marriage is not a partnership, we feel we would not only depart from established Florida law but would derogate the integrity of marriage.
However, we additionally hold that there is a limitation upon the general rule that both spouses are responsible for necessaries provided to each. That limitation and the reasons therefor are described in Jersey Shore as follows:
However, in the absence of an agreement, the income and property of one spouse should not be exposed to satisfy a debt incurred by the other spouse unless the assets of the spouse who incurred the debt are insufficient.
Normally a person is not liable for the debt of another in the absence of an agreement. The imposition of liability based on marital status alone is an exception to that rule. Nonetheless, it is a justifiable exception... . However, it would be unfair to accord the same rights to a creditor who provides necessaries on the basis of an agreement with one spouse as to a creditor who has an agreement with both spouses. In the absence of such an agreement [with both spouses], a creditor should have recourse to the property of both spouses only where the financial resources of the spouse who incurred the necessary expense are insufficient. Marshalling the marital resources in that manner grants some protection to a spouse who has not expressly consented to that debt.
417 A.2d at 1010. Consistent with the thrust of that quotation, we also hold that for purposes of pleading and proof by a creditor, a showing that the spouse to whom necessaries were provided is unable to pay therefor shall be a condition precedent to the liability of the other spouse for the necessaries. See Edward L. Nezelek, Inc. v. Sunbeam Television Corp., 413 So.2d 51, 56 (Fla. 3d DCA 1982)("compliance with conditions precedent must be at least generally averred... .").
An argument could be made that that limitation should be treated as an exception and not as a condition precedent to liability, so that one spouse will be liable for necessaries provided to the other spouse unless the one spouse shows that the spouse to whom the necessaries are provided is able to pay therefor. If the limitation were to be so treated, the spouse against whom liability is being claimed by a creditor for necessaries provided to the other spouse would have the burden of showing that the other spouse is able to pay. The argument would be that, after all, a spouse knows much better than a creditor the financial circumstances of the other spouse. Yet, as Jersey Shore says, "[n]ormally a person is not liable for the debt of another in the absence of an agreement. The imposition of liability based on marital status alone is an exception to that rule ... [and] it would be unfair to accord the same rights to a creditor who provides necessaries on the basis of an agreement with one spouse as to a creditor who has an agreement with both spouses." 417 A.2d at 1010. Jersey Shore went on to say that under those circumstances it is appropriate that the law "grants some protection to a spouse who has not expressly consented to the debt." Id. While Jersey Shore did not explicitly assign the burden of proof under those circumstances, we, by establishing the foregoing condition precedent to liability to be proved by the creditor, do so on the basis of the same sort of reasoning as we have quoted from Jersey Shore. That is, so assigning the burden of proof also grants "some protection to a spouse who has not expressly consented to that debt" in that that spouse should not be sued by a creditor unless the spouse to whom necessaries were provided is unable to pay. Also, in most cases the creditor, at the time the necessaries are provided, presumably has the opportunity to investigate the financial status of the spouse to whom the necessaries are being provided. Therefore the creditor may fairly be expected to be aware of that status when payment is to be made. Further, to treat that limitation as an exception to be established by the spouse to whom necessaries were not provided could promote marital disharmony.
The record in this case is silent as to whether or not that condition precedent exists in this case. It was not pleaded. But, rather than deciding this appeal on the *205 basis of retroactively establishing a burden on the creditor to have pleaded and proved the existence of that condition precedent in order to prevail against the husband in this case for necessaries provided to his wife, we remand for further proceedings in that regard. We do so in recognition that the law of Florida has been changed on this appeal, no party had been on notice thereof, and the hospital relied upon prior law which did not include that condition precedent. Cf. the doctrine of prospective overruling, as implemented in Jersey Shore, 417 A.2d at 1010-11, and Manatee, 392 So.2d at 1359, each of which announced a change in the law to apply only in future cases. See also the discussion of that doctrine in Gilbert v. Gilbert, 447 So.2d 299, 306-08 (Fla. 2d DCA 1984) (Lehan, J., concurring in part and dissenting in part), approved, 463 So.2d 223 (Fla. 1985). Compare Parkway, 400 So.2d at 167 (change in the law applied retroactively). Thus the change in the law effected by this opinion applies both to this case and prospectively.
While our holding that both spouses may be liable for necessaries provided to each is different from the result reached in Schilling, we fundamentally agree with the philosophy of the Virginia Supreme Court in Schilling that even in an equal protection context the choice of whether a husband and wife should both be responsible for necessaries provided to each or whether neither should be liable for necessaries provided to the other is best a choice for the legislature to make. Our reason is that stated in a common law context by the Florida Supreme Court in Shands:
[T]he issue is one with broad social implications, the resolution of which requires input from husbands, wives, and the public in general... . [O]f the three branches of government, the judiciary is the least capable of receiving public input and resolving broad public policy questions based on a societal concensus [sic].
497 So.2d at 646.[4]
Thus, we specifically recognize that the legislature may decide whether the choice of law we have declared in this case should remain as the law of Florida, with the limitation that husbands and wives may not constitutionally be treated differently in this context. Why are we nonetheless declaring what the law now is? The answers are: (a) there appear to be, as we have explained, more persuasive reasons under Florida law for both husband and wife to be responsible for necessaries provided to each, rather than neither being responsible for necessaries provided to the other; (b) there does not appear to be a persuasive reason to say nothing in that regard in the interim before the legislature has had the opportunity to act: if we had found that the common law doctrine of necessaries violates the right to equal protection, as we have found, and we had said nothing further, did not make a choice of law, and had simply relegated to the legislature the task of making that kind of choice, we would then in effect not simply have left a hiatus in the law, however temporarily until the legislature acts, if at all, but, by having said that the doctrine of necessaries violates equal protection, we would have in effect abolished the doctrine of necessaries; since that doctrine is that husbands are responsible for necessaries provided to their wives, the abolishment of that doctrine would have had the effect, as in Schilling, of a court making the choice of law that neither is responsible for necessaries provided to the other, and (c) if, as would not appear unlikely especially in view of existing legislation which places the duty of maintenance and support equally upon husbands and wives as noted in Manatee, 392 So.2d at 1357, the legislature agrees that both spouses should be responsible for necessaries provided to each, rather than neither being responsible for necessaries provided to the other, there would be no pressure for hasty legislation on the subject. Also, there is nothing unusual in a state court declaring what the law is, especially on constitutional grounds and especially *206 when, as here, it is the court-made common law which is being changed on constitutional grounds and there is no controlling law to the contrary.[5]
The following observations additionally concern our having made a choice of law in this case. It appears logically inevitable that there will be a choice by a court of court-made law in an equal protection case like this which does not involve applicable statutory law. This may be in partial contrast to equal protection cases which directly involve a statute by which the legislature has expressed a choice of law. An *207 equal protection case like this involves two different treatments by the common law (i.e., court-made law) of two different classes of people, husbands and wives. Unless a court in some way makes its choice between the common law applicable to husbands (responsibility for necessaries provided to the other spouse) and that applicable to wives (no responsibility for necessaries provided to the other spouse), there would be nothing for protection of the law to be equal to. And if a court failed to make such a choice, followed existing common law by affirming a final judgment like that in this case which held a husband responsible for necessaries provided to his wife, left the law as is that a wife is not reciprocally responsible, and simply announced that the choice of law is for the legislature to make, the constitutional equal protection violation would have been ignored, which a court is not entitled to do. Thus, it appears inevitable that there be a court-made choice of law in order not to ignore the equal protection violation. Also, when, as in this case, each of the two choices is previously established court-made law, the court's choice must, of course, be of court-made law.
Even in Schilling, which may seem to have left the entire matter to the legislature, a choice of law was made by the Virginia Supreme Court in that, as we have said, the doctrine of necessaries was in effect abolished in Virginia. That doctrine was defined as a husband being responsible for necessaries provided to his wife, 303 S.E.2d at 906, and the abolishment of the doctrine meant that neither husband nor wife was responsible for necessaries provided to the other. By our holdings in this case and our specific recognition of the province of the legislature we are taking something of a middle ground between the apparent position of the Virginia Supreme Court in Schilling, and that of the New Jersey Supreme Court in Jersey Shore, notwithstanding the result in this case being like that in Jersey Shore.[6]
Remanded for proceedings consistent herewith.
SCHEB, A.C.J., and THREADGILL, J., concur.
NOTES
[1] Although the judgment also held the wife responsible and the notice of appeal was filed by husband and wife, the argument is made on behalf of the husband. It appears to be conceded that the wife signed an agreement to be responsible for the services.

No special equities are argued by either side to apply.
Controlling federal constitutional law having been much more fully developed in this area, we decide this case under the federal constitution.
[2] The Supreme Court may be thought to have thereby promoted change in custom through law (an approach which could be generally identified with the school of jurisprudence sometimes called "legal realism"), while the Wisconsin Supreme Court, which in Marshfield Clinic approved unequal application of that state's law of necessaries to husbands and wives, may be thought to have thereby promoted the accomodation of the law to custom (an approach which could be generally identified with the school sometimes called "historical jurisprudence"). See Lloyd and Freeman, Lloyd's Introduction to Jurisprudence, chs. 8, 10 (5th ed. 1985). That, if a school of jurisprudence were to be judicially announced to apply in all cases (an announcement which would have highly questionable validity), the latter approach would represent the school of jurisprudence which under most circumstances would most likely result in the "domestic Tranquility" referred to in the Preamble to the United States Constitution is not at all determinative of the disposition of this case. The law requires that the supreme interpretation and implementation of the United States Constitution, including the additional references in the Preamble to a "more perfect Union" and "Justice," be by the United States Supreme Court.
[3] For agreement that Manatee and Parkway were based upon equal protection rationales, See Shands Teaching Hospital & Clinics, Inc. v. Smith, 480 So.2d 1366, 1367, 1369 (Fla. 1st DCA 1985) (Barfield, J., concurring).
[4] That statement could be identified with the historical school of jurisprudence. See supra note 2.
[5] This is not what Judge Barfield referred to as "elitist" and "dangerous" "judicial activism." Shands Teaching Hospital & Clinics v. Smith, 480 So.2d 1366, 1369-70 (Fla. 1st DCA 1985) (Barfield, J., concurring). Nor, with respect, do we agree with his characterizations of Manatee and Parkway in those words. We feel we should explain our disagreement in light of his extensive reasoning in support of his view that Manatee and Parkway represented such activism, a view with which the Florida Supreme Court might be thought to have indicated agreement in its Shands opinion. Also, as is noted below, he additionally expressed a view favoring a result contrary to that which we reach in this case.

Manatee and Parkway may be viewed as simply having applied equal protection concepts in what the supreme court, on the ground of lack of standing of a hospital to raise the equal protection issue, decided was only a common law, and not a constitutional, context. Manatee and Parkway did not purport to create new law out of the blue, nor do we. To the contrary, Manatee and Parkway might well be thought of as having applied the so-called "`logical, neutral principle' approach" to jurisprudence. It is said that that approach "focuses not upon precedent per se but upon the principles articulated in judicial decisions. It treats the resolution of disputes as a process by which principles are reaffirmed and extended from time to time." "Should Judges Make Law?" 3 Remand 1, 2 (1987). Indeed, in Manatee Judge Buck explained how the holding of that case was based upon not only principles articulated in Florida Supreme Court decisions but also upon closely analogous concepts which had been adopted by the Florida legislature in response to changing times. 392 So.2d at 1357. On that basis Manatee simply represented a court changing court-made rules for what were thought to be compelling reasons, with which we now, in a somewhat different procedural context, agree is called for by United States Supreme Court and Florida law. As Judge Schwartz said in Parkway, "[T]he result is compelled by ... Florida constitutional, statutory, and decisional law... ." 400 So.2d at 167. Other reasons for our view that Manatee and Parkway did not represent what is perhaps generally thought to be "judicial activism" are given in footnote 6, infra.
In any event, as we said toward the beginning of this opinion and in footnote 2, we are constrained to follow United States Supreme Court rationale and precedent which may be thought to have promoted change through constitutional interpretation and could be identified with the "legal realism" school of jurisprudence. Proponents of that school have been said to have "discounted the worth of many traditional values and expressed a preference for pragmatic experimentation." Monahan & Walker, Social Science in Law 16-17 (1985). While the use of legal realism in that sense might be thought to constitute "judicial activism," that is not determinative for present purposes. The Supreme Court of course establishes the law of the land. (The foregoing description of "legal realism" appears similar to what Judge Barfield described as the "Reform Model" school. 480 So.2d at 1371.)
Notwithstanding the view that a court should not make the choice of law we have made and declared in this case, see Judge Barfield's concurring opinion, 480 So.2d at 1368-69, we do not doubt our authority, and feel a responsibility, to do so. Indeed, for the reasons further explained below, it appears inevitable that a court make some choice of law in this kind of case despite the sometimes controversial nature of the general subject. See Remand, supra at 1 ("The controversy is as old as history and as current as today.") To the extent that we have in this case specifically recognized the legislature's authority to establish different law so long as there is no violation of equal protection, we are not parting ways with what may be called "judicial restraint," and our views are in that respect not dissimilar to those expressed by Judge Barfield. See Remand, supra at 2, 3 ("Within constitutional limits, the legislature may undo what the judges do in making substantive law... . those who advocate judicial restraint may urge the adoption of rules which allow another branch of government ... to determine the outcome.")
"[J]udges make law when they decide [any] constitutional cases," id. at 2, and by our present decision we by no means purport to reflect for all cases a rigid view as to any of the labelled approaches to, or schools of, jurisprudence referred to in this footnote and in footnotes 2 and 4.
Surely there is no disagreement that "Each judge confronts the riddle of judicial lawmaking" and that "it merits thoughtful reflection." Id. at 3. We have undertaken such reflection, Manatee and Parkway appear to us to have done so too, and of course so did Judge Barfield whose views provide much food for serious thought. See also generally Aldisert, The Judicial Process, chs. II, IV, § 5B (1976).
[6] The apparent inevitability of a court in this kind of case directly or implicitly declaring its choice of law similarly seems to have existed in Manatee and Parkway to the extent that equal protection was considered to be, in fact or effect, an issue in that case, as it was. To implicitly base a choice of law decision on the standing of a hospital to raise the equal protection issue, as did Manatee and Parkway, hardly appears to have represented "judicial activism," certainly not when the standing issue was a legitimately debatable legal question, as it was. Although, consistent with Judge Barfield's District Court of Appeal concurring opinion, 480 So.2d at 1368, the Florida Supreme Court in Shands denied standing to a hospital to raise the equal protection issue in the hospital's suit against a wife for necessaries provided to her husband, 497 So.2d at 646 n. 1, the holding and reasoning of Jersey Shore in that regard was to the contrary. 417 A.2d at 1006-07. Also, in Marshfield Clinic, which appears to have been the same kind of suit brought by a hospital, no question of standing to assert that issue was mentioned in the Wisconsin Supreme Court's opinion.

To make the choice that neither spouse is responsible for necessaries provided to the other, as did in effect Schilling and as is endorsed by Judge Barfield's concurring opinion, 480 So.2d at 1369, would seem no less "activism" than making the choice that both are reciprocally responsible. Indeed, since, as we have said, the Schilling type of choice, if adopted, may be viewed as causing a departure from established Florida law that marriage is a partnership, as derogating the integrity of marriage, and as inconsistent with legislative intent represented by analogous statutes, making such a choice might be thought of as more nearly "judicial activism."
When a statute is found to have unequally treated a class of people covered by the statute as compared to a class not so covered, a court may make the choice of applying the statute to both classes or to neither. In Wengler the United States Supreme Court left that choice to the state court, and thus invited court-made law, recognizing that the state court was in a better position to make a choice "consonant with the state legislature's overall purpose... ." 446 U.S. at 152-53, 100 S.Ct. at 1546, 64 L.Ed.2d at 117. The choice we have made in this case is, as we have explained, a choice of that kind, as we believe was that in Manatee and Parkway.