No. 66,075

St. Francis Regional Medical Center, Inc., *Appellee,* v. Edward D. Bowles, *Defendant,* and Tamara Bowles, *Appellant.*

(836 P.2d 1123)

Opinion filed July 10, 1992.

*John Black,* of Black and Black, of Salina, argued the cause and was on the briefs for appellant.

*Christopher A. McElgunn,* of Klenda, Mitchell, Austerman & Zuercher, of Wichita, argued the cause, and *John B. Gilliam* and *Troy H. Gott,* of the same firm, were with him on the briefs for appellee.

*Curtis J. Waugh, Wayne T. Stratton,* and *David E. Bruns,* of Goodell, Stratton, Edmonds & Palmer, of Topeka, were on the brief for *amicus curiae* Kansas Hospital Association.

The opinion of the court was delivered by

HERD, J.: St. Francis Regional Medical Center, Inc., sued Edward Bowles and his wife, Tamara Bowles, for the cost of unpaid medical services provided to Edward. Edward confessed judgment in the amount of $12,021.54 but was financially unable to satisfy the delinquent balance due; the trial court held Tamara was liable for Edward's medical expenses. Tamara appealed to the Court of Appeals, which affirmed the trial court. *St. Francis Regional Med. Center, Inc. v. Bowles,* 16 Kan. App. 2d 374, 823 P.2d 226 (1991). We granted Tamara's petition for review.

The sole issue on appeal is whether Tamara is liable for Edward's medical expenses as a matter of law even though she did not contract with St. Francis for her husband's care.

Relying upon the common-law rule which imposes liability on a husband for the wife's necessaries, the trial court extended the common-law rule to likewise impose liability on a wife for her husband's necessaries. The common-law doctrine was stated as follows:

"Under the common-law doctrine of necessaries, a husband who was derelict in furnishing food, shelter, and medical services to his wife was liable to a third party who provided these necessaries to the wife. However, because a wife was deemed legally incapable of incurring an obligation independent of her husband and because the husband was legally, and exclusively, responsible for providing the necessaries for the entire family unit, there was no reciprocal liability on the part of the wife to a third party for providing the necessaries of the husband." *Shands Teaching Hosp. and Clinics v. Smith,* 497 So. 2d 644, 645 (Fla. 1986).

This court first recognized the doctrine of necessaries in *Harttmann v. Tegart,* 12 Kan. 177 (1873). In *Harttmann,* we stated:

"We suppose a mutual legal as well as moral obligation rests upon every husband and wife to furnish each other, so far as it is within their power, everything necessary for their mutual comfort and enjoyment. It is certainly the legal as well as moral duty of every husband to see that his wife is furnished, or has the means of furnishing herself, with everything necessary

and suitable for a person in their station and condition. For this reason, it is always conclusively presumed that a wife who lives and cohabits with her husband has an agency from him, and upon his credit, to procure everything that is necessary for herself or family . . . ." 12 Kan. at 179-80.

The Court of Appeals, relying upon *Harttmann,* disagreed with Tamara's claim that the doctrine of necessaries was based upon the concept of unity of marriage. Instead, the Court of Appeals found the doctrine of necessaries arose from agency principles. In her petition for review, Tamara disputed the Court of Appeals' holding, arguing that spousal agency arose from the doctrine of necessaries, which is based upon the concept of unity of marriage. We agree. The obligation to provide necessaries gives rise to the presumption of agency.

There is no dispute over whether medical services are necessaries. The parties further agree the doctrine of necessaries violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because historically the doctrine was applied to husbands only. Both parties cite *Orr v. Orr,* 440 U.S. 268, 59 L. Ed. 2d 306, 99 S. Ct. 1102 (1979), to support this contention. In *Orr,* the United States Supreme Court struck down Alabama alimony statutes which required husbands, but not wives, to pay alimony upon divorce. Finding this gender-based classification did not serve an important governmental objective, the Court stated,

"[T]he 'old notio[n]' that 'generally it is the man's primary responsibility to provide a home and its essentials,' can no longer justify a statute that discriminates on the basis of gender. 'No longer is the female destined solely for the home and the rearing of the family, and only the male for the marketplace and the world of ideas . . . .'" 440 U.S. at 279-80 (quoting *Stanton v. Stanton,* 421 U.S. 7, 10, 14-15, 43 L. Ed. 2d 688, 95 S. Ct. 1373 [1975]).

The parties, however, disagree upon the remedy. Tamara argues the doctrine should be abolished, while St. Francis contends the appropriate remedy is to apply the doctrine of necessaries to both husbands and wives, thereby making it gender neutral. Because no Kansas appellate court has addressed this issue, we look to other states for guidance.

When faced with the same issue, the New Jersey Supreme Court also held the traditional doctrine of necessaries violated

the Fourteenth Amendment to the United States Constitution. The court found that in a modern marriage husbands and wives are a financial unit whether they contribute income or domestic services. The court noted the common-law could be adapted to reflect societal changes. When considering possible changes in the common-law rule, the court stated:

"Neither equity nor reality justifies imposing unqualified liability on one spouse for the debts of the other or exempting one spouse from the liability for the necessary expenses of the other.

. . . .

"[B]oth spouses are liable for the necessary expenses incurred by either spouse. In a viable marriage, the marital partners can decide between themselves how to pay their debts. A creditor providing necessaries to one spouse can assume that the financial resources of both spouses are available for payment. However, in the absence of an agreement, the income and property of one spouse should not be exposed to satisfy a debt incurred by the other spouse unless the assets of the spouse who incurred the debt are insufficient." *Jersey Shore, Etc. v. Estate of Baum,* 84 N.J. 137, 149-51, 417 A.2d 1003 (1980).

Believing it would be unfair to apply this new rule retrospectively, the court did not find the defendant liable for her husband's hospital bill. 84 N.J. at 152.

A less clear-cut rule has evolved in Florida. In *Shands Teaching Hosp. and Clinics,* 497 So. 2d 644, the Florida Supreme Court addressed the issue of whether a hospital could demand payment from a wife for the debt created by her husband's last illness. The wife had not agreed to pay her husband's medical bills when he was admitted to the hospital. The court refused to address the issue of whether application of the doctrine of necessaries violated equal protection because the court found the hospital lacked standing to raise this equal protection argument. The Florida Supreme Court believed any change was best left to the legislative branch and, thus, affirmed the trial court's decision to dismiss the suit. In so doing, the Florida Supreme Court disapproved of two earlier Florida Court of Appeals decisions that had held the wife liable for the necessaries of her husband. See *Parkway General Hosp. Inc. v. Stern,* 400 So. 2d 166 (Fla. Dist. App. 1981); *Manatee Convalescent Center v. McDonald,* 392 So. 2d 1356 (Fla. Dist. App. 1980).

More recently, however, the Florida Court of Appeals has applied the doctrine to both husbands and wives. *Webb v. Hillsbourough Cty. Hosp. Auth.*, 521 So. 2d 199 (Fla. Dist. App. 1988). In *Webb*, a husband appealed from the trial court's decision that held him responsible for his wife's hospital bill. The husband had not agreed with the hospital to pay his wife's medical bills and argued that making him liable by invoking the doctrine of necessaries violated his right to equal protection. The husband had standing to raise such an argument and the court held the traditional application of the doctrine of necessaries violated the Equal Protection Clause. Relying upon *Jersey Shore, Etc. v. Estate of Baum*, 84 N.J. 137, the Florida Court of Appeals concluded the doctrine should apply to both husbands and wives. The court additionally limited this new rule to require the creditor to seek payment from the spouse who incurred the necessary expense before the creditor could seek payment from the other spouse. The court declared this change in the law applied to the case under consideration and prospectively. 521 So. 2d at 204-05.

In *Schilling v. Bedford Co. Hospital*, 225 Va. 539, 303 S.E.2d 905 (1983), a husband was sued for his wife's medical expenses. The Virginia court found the doctrine was unconstitutional because it created a gender-based classification that was not substantially related to serving an important governmental interest. The court declined to extend the doctrine to apply to wives as well as husbands. Instead, the court abolished it. The Virginia court stated it believed extension of the doctrine was best left to the legislature.

The Maryland Supreme Court also abolished the doctrine of necessaries. However, it based its decision upon the Maryland Equal Rights Amendment. The court noted the legislature had amended alimony, support, and spousal desertion statutes to be gender neutral. The court further stated that extending the doctrine of necessaries was a matter of fundamental policy and best left to be determined by the legislature. *Condore v. Prince George's Co.*, 289 Md. 516, 531-32, 425 A.2d 1011 (1981).

Although Pennsylvania had enacted an Equal Rights Amendment, a Pennsylvania court extended the doctrine of necessaries to make a wife liable for medical services provided to her hus-

band. The court stated: " 'The law must not be reluctant to remain abreast with the developments of society and should unhesitantly disregard former doctrines that embody concepts that have since been discredited.' " *Albert Einstein Med. Center v. Gold,* 66 Pa. D & C 2d 347, 349, 25 Pa. Fiduc. 337 (1974) (quoting *Conway v. Dana,* 456 Pa. 536, 539, 318 A.2d 324 [1974]). The court went on to state, however, that the wife was not automatically liable for the amount of the bill because she could raise any defense available to her.

Kansas statutes provide guidance on the existing public policy of the state. Kansas does not have a statute or constitutional amendment that directly governs this issue; however, from the beginning of its statehood Kansas granted married women equal rights under the law. Article 15, § 6 of the Kansas Constitution, adopted and ratified in 1859, directed the Kansas Legislature to give women the right to own property. The legislature did this in 1868 by passing the Married Women's Act, which later became the Married Persons' Act. See K.S.A. 23-201 *et seq.*

In the last few decades, Kansas has enacted and amended certain statutes in order to recognize a mutual duty of support between husbands and wives. For example, K.S.A. 1991 Supp. 21-3605(2) makes it a class E felony for an individual, without cause, to fail to provide support to the individual's spouse "in necessitous circumstances." The statute had long applied only to husbands; however, in 1976 the legislature amended the statute to apply to either spouse. L. 1976, ch. 157, § 1.

K.S.A. 1991 Supp. 21-3605 is supplemented by the criminal desertion statute, K.S.A. 21-3606, which states:

"Criminal desertion is a *husband's or wife's* abandonment or willful failure without just cause to provide for the care, protection or support of a spouse who is in ill health or necessitous circumstances.

"Criminal desertion is a class E felony." (Emphasis added.)

The Kansas divorce statute that provides for the award of maintenance is gender neutral. K.S.A. 1991 Supp. 60-1610(b)(2) states a divorce decree "may award *to either party* an allowance for future support denominated as maintenance, in an amount the court finds to be fair, just and equitable under all of the circumstances." (Emphasis added.)

Tamara claims several Kansas statutes shield the family unit from the reach of a spouse's creditors and, hence, support her argument that the doctrine of necessaries should be abolished rather than expanded. For example, the homestead cannot be alienated by one spouse without the other's consent. K.S.A. 1991 Supp. 60-2301. Several types of homestead property are exempt from execution by creditors. K.S.A. 1991 Supp. 60-2304. At the death of a spouse, the surviving spouse is entitled to set aside certain property, including a homestead and cash allowances, thus saving it from execution by the deceased spouse's creditors. K.S.A. 59-401 *et seq.* St. Francis counters Tamara's argument regarding these statutes by pointing out the allowances or exemptions provided by the statutes will also be applicable to health care providers seeking compensation for spousal necessaries.

Tamara also contends the application of the doctrine of necessaries to both spouses will promote divorce when one spouse becomes seriously ill. She, however, does not present any evidence that its traditional application to husbands only has prompted husbands to divorce their seriously ill wives.

Tamara further argues that if the common-law doctrine of necessaries is expanded it should offer some special protection from economic adversity. For support, Tamara cites K.S.A. 1991 Supp. 39-785 *et seq.* These statutes allow spouses to divide their resources and income in order to qualify for federal Medicare catastrophic illness coverage in situations where one spouse requires long-term care. See K.S.A. 1991 Supp. 39-791 (K.S.A. 1991 Supp. 39-785 *et seq.* was suspended in 1989 and superceded by the federal Medicare catastrophic coverage act of 1988).

The common-law is constantly evolving to meet society's changing needs and beliefs. In *Hoffman v. Dautel,* 189 Kan. 165, 168, 368 P.2d 57 (1962), we stated:

"One of the basic characteristics of the common-law is that it is not static, but is endowed with vitality and a capacity to grow. It never becomes permanently crystallized but changes and adjusts from time to time to new developments in social and economic life to meet the changing needs of a complex society."

We hold the doctrine of necessaries in its historical form violates the Equal Protection Clause of the Fourteenth Amendment, and we hereby expand the common-law doctrine to apply to husbands

and wives equally. However, before a creditor may seek payment from a spouse the creditor must first pursue collection from the person who received the necessary goods or services. Only if the spouse who received the benefits has insufficient resources to satisfy the debt may the other spouse be liable. Such liability is not automatic; the second spouse may raise any defenses available.

The judgments of the district court and the Court of Appeals are affirmed.