643 So.2d 681 (1994)
SOUTHWEST FLORIDA REGIONAL MEDICAL CENTER, INC., a Florida corporation, Appellant,
v.
Barbara E. CONNOR, Appellee.
No. 93-02766.
District Court of Appeal of Florida, Second District.
October 12, 1994.
James G. Decker and Margaret Racaniello of Decker and Smith, P.A., Fort Myers, for appellant.
Thomas E. Garlick and Jon D. Parrish of Harter, Secrest & Emery, Naples, for appellee.
PER CURIAM.
In this appeal, we are asked to decide whether, in the absence of any written agreement, a wife may be liable for the medical bills incurred by her husband. Our decision depends on the current status of the common law doctrine of necessaries.[1]
Southwest Florida Regional Medical Center ("Southwest") provided medical services to Kenneth Connor in 1992. On March 15, 1993, Southwest sued both Kenneth Connor *682 and his wife, Barbara, alleging that Mr. Connor had executed a written agreement to pay for medical services but was unable to pay the remaining balance of over $85,000. Mrs. Connor moved to dismiss the hospital's complaint against her because she had not executed an agreement to pay for the services rendered to her husband. The hospital argued that she should, nevertheless, be required to pay pursuant to the common law doctrine of necessaries as expanded by this court in Webb v. Hillsborough County Hospital Authority, 521 So.2d 199 (Fla. 2d DCA 1988). The trial court declined to apply the rule of reciprocal liability announced in Webb and noted that "while the Second District Court did observe that under certain circumstances `a wife may be responsible for necessaries provided to her husband,' such observation was not essential to its holding that the husband's equal protection rights had not been violated."
In Webb, a husband appealed from a final judgment that held him liable for his wife's hospital bills under the doctrine of necessaries. The husband claimed that, because a wife had no liability for her husband's necessaries, to hold him responsible for his wife's medical bills violated his right to equal protection under the United States Constitution. This court agreed. After holding that "husbands and wives cannot constitutionally be treated differently in the context of this case," the issue that remained was how they were both to be treated. 521 So.2d at 202. Two possible changes in the law were considered: that both the husband and the wife be responsible for the necessaries provided to each, or that neither be responsible for the necessaries provided to the other. Rather than simply void the husband's long-standing obligation on newly applied constitutional grounds, we chose instead the rule of reciprocal liability and held that "as a general rule, both husband and wife are responsible for necessaries provided to each." Id. However, we limited this rule by also holding that, as a condition precedent to liability of the spouse who was not provided necessaries, a creditor must plead and prove that the spouse to whom necessaries were provided is unable to pay. In Webb, we also expressly recognized that by creating a new rule of reciprocal liability, the law was being changed. Therefore, we remanded for further proceedings and announced that the change in the law effected by our opinion applied prospectively.
Here, the complaint filed by Southwest stated a cause of action against Mrs. Connor in accordance with the requirements set forth in Webb. It was, therefore, error for the trial court to grant Mrs. Connor's motion to dismiss with prejudice. It was also error for the trial court to conclude that the rule created in Webb was dicta and that Webb did not apply. Webb has been the law in the Second District since 1988 and the trial courts in this district are bound to follow it. See Pardo v. State, 596 So.2d 665 (Fla. 1992).
We note that there is language in the trial court's order that suggests that the trial court felt bound to apply the unmodified doctrine of necessaries as recognized by the supreme court in Shands Teaching Hospital and Clinics, Inc. v. Smith, 497 So.2d 644 (Fla. 1986). The language of the order also suggests that the trial court further believed that applying Webb would mean disregarding Shands. We disagree. However, we understand that the various cases that address the doctrine of necessaries in Florida are difficult to reconcile and conflict among the districts. To provide a framework for analyzing the current status of the doctrine of necessaries, we summarize the development of the doctrine in Florida.
The supreme court recognized and applied the common law doctrine as early as 1895 in Phillips v. Sanchez, 35 Fla. 187, 17 So. 363 (1895), and continued to uphold it as recently as 1986 in Shands, 497 So.2d 644. However, the district courts of appeal have been divided *683 in their approach to the doctrine both before and after Shands.
In Manatee Convalescent Center, Inc. v. McDonald, 392 So.2d 1356 (Fla. 2d DCA 1980), this court decided the time had come to change the common law doctrine by imposing reciprocal liability on the wife for the necessary expenses of her husband. In support of this holding, we said that "[c]hanging times demand reexamination of seemingly unchangeable legal dogma." Id. at 1358. We observed that the supreme court had rejected the common law unity concept of marriage in Gates v. Foley, 247 So.2d 40 (Fla. 1971), and adopted the partner concept by granting a wife the right to claim loss of consortium against one who causes personal injury to her husband. Id. at 1357. We also observed that "the movement of the law has inexorably been toward equality of the sexes," noting that the legislature had overhauled Chapter 61 and granted husbands the same right to alimony already enjoyed by wives. Id. In further support of our decision to create a new rule, we quoted from Gates:
It may be argued that any change in this rule should come from the legislature... . Legislative action could, of course, be taken, but we abdicate our own function, in a field peculiarly non-statutory, when we refuse to consider an old and unsatisfactory court-made rule.
Id. (quoting Gates, 247 So.2d at 43).
The Third District adopted the Manatee rule in Parkway General Hospital, Inc. v. Stern, 400 So.2d 166 (Fla. 3d DCA 1981), and held a wife liable for her husband's medical bills. Since the basis of the reciprocal liability rule had been "thoroughly explicated" in the Manatee opinion, the court found that "[i]t is enough to say that the result is compelled by the state of modern society and of Florida constitutional, statutory, and decisional law all of which recognize the equality of spouses of either sex in their relationships to each other and to the law itself." Id. at 167.
The First District declined to follow Manatee and Parkway in Shands Teaching Hospital and Clinics, Inc. v. Smith, 480 So.2d 1366 (Fla. 1st DCA 1985), approved, 497 So.2d 644 (Fla. 1986). Instead, that court recognized that the common law doctrine of necessaries had "never been explicitly altered by the constitution, Court or statutes, to require a wife to be subject to an action by a facility which has provided medical services to her husband without her contractual assumption," and applied the doctrine to affirm dismissal of a hospital's complaint against a wife. Id. at 1366. The court then observed that "[t]he lesson to be learned from Hoffman v. Jones, 280 So.2d 431, 434 (Fla. 1973), is that in the absence of constitutional or statutory authority reflecting a change in established law, the district courts of appeal do not enjoy the prerogative of overruling controlling precedent of the Florida Supreme Court." Id. The court also expressed its view that the issue was one most appropriate for legislative concern. Id. Conflict with Manatee and Parkway was certified.
The supreme court accepted review and resolved the conflict in Shands, 497 So.2d 644. In that opinion, the court reviewed the roots of the common law doctrine of necessaries and agreed with the parties that "it is an anachronism to hold the husband responsible for the necessaries of the wife without also holding the wife responsible for the necessaries of the husband." Id. at 645. After summarizing the arguments made by the parties, the court observed there could be instances where it would be inequitable to hold either spouse liable for the medical services received by the other. Id. at 646. In a footnote, the court pointed out that the issue of whether it is a denial of equal protection to hold only the husband liable for the wife's necessaries "is not before us." Id. n. 1. The court declined to allow the hospital standing to raise the equal protection argument. The court then continued its observations regarding the arguments for and against a new rule and noted there could also be instances where it could be inequitable not to hold either spouse liable for the necessaries provided to the other. Finding merit in all the competing arguments, the court reached two conclusions that resulted from "this decisional quandary":
The first is that the issue is one with broad social implications, the resolution of which *684 requires input from husbands, wives and the public in general. The second conclusion is that, of the three branches of government, the judiciary is the least capable of receiving public input and resolving broad policy questions based on a societal consensus.
Id. at 646.
The court then set forth as the controlling question, "whether this Court is the proper institution to resolve this issue," and considered it "`wiser to leave it to the legislative branch.'" Id. (quoting Zorzos v. Rosen, 467 So.2d 305 (Fla. 1985)). The First District's decision upholding the unmodified doctrine was upheld and the Manatee and Parkway decisions were expressly disapproved.
We followed Shands by reversing a trial court's ruling that both husband and wife were liable for the medical expenses of the husband in Wetjen v. Sarasota County Public Hospital Board, 506 So.2d 97 (Fla. 2d DCA 1987). A year later, in Webb, we were confronted with a claim against a husband for the medical expenses of his wife and were called upon, for the first time, to squarely address the equal protection issue that was not present in Shands. In order to both protect the husband's constitutional right to equal protection and preserve, as best we could, the doctrine of necessaries, we chose to expand the common law doctrine to impose the same liability upon a wife that the common law doctrine imposed upon the husband at the time it was adopted.
No appellate court has followed the reciprocal liability rule announced in Webb.[2] The Fourth District applied the common law doctrine of necessaries and reversed a judgment entered against a wife for the medical expenses incurred by her husband in Faulk v. Palm Beach Gardens Community Hospital, Inc., 589 So.2d 1029 (Fla. 4th DCA 1991), and Heinemann v. John F. Kennedy Memorial Hospital, 585 So.2d 1162 (Fla. 4th DCA 1991). Neither opinion discussed or cited Webb. The Fifth District did cite Webb in Halifax Hospital Medical Center v. Ryals, 526 So.2d 1022 (Fla. 5th DCA 1988), after stating that it would seem logical that either both spouses or neither should be liable for the necessaries of the other. However, it disagreed with the trial court's ruling that the common law doctrine was no longer viable in Florida and held that, until the legislature alters the common law rule, the husband is financially responsible for the necessary maintenance of his wife. The Fifth District rejected the husband's equal protection argument. Three years later, another equal protection claim was raised by a husband and, once again, the Fifth District rejected the argument. Waite v. Leesburg Regional Medical Center, Inc., 582 So.2d 789 (Fla. 5th DCA), review denied, 592 So.2d 683 (Fla. 1991). The court cited the Shands opinion extensively and expressly held that "[n]o constitutional equal protection violation occurs by requiring a husband to support and protect his wife, as the common law precedent requires. Should the legislature deem a reciprocal obligation desirable it can so provide." Id. at 790. Although the holding was contrary to Webb, the court did not expressly recognize or certify conflict. However, the husband filed a notice to invoke the discretionary jurisdiction of the supreme court to review the conflict.[3] The supreme court declined to exercise its jurisdiction.[4]
The present status of the common law doctrine of necessaries is that it has been expanded by this court in Webb (in response to the equal protection claim not addressed by the supreme court in Shands), but subsequently reaffirmed in its unmodified form by the Fourth and Fifth districts. As one commentator has noted, the law in Florida regarding the common law doctrine of necessaries *685 is muddied.[5] In an effort to provide stability in the law and in order that the supreme court may declare the status of the common law doctrine of necessaries in Florida, we certify conflict with Faulk, 589 So.2d 1029, Heinemann, 585 So.2d 1162, Waite, 582 So.2d 789, and Halifax, 526 So.2d 1022. However, until the supreme court resolves the conflict and declares the law of Florida, the rule of reciprocal liability announced in Webb controls in this district.
Reversed and remanded for further proceedings.
CAMPBELL, A.C.J., and PARKER and FULMER, JJ., concur.
PARKER and FULMER, JJ., concur specially each with opinion.
FULMER, Judge, concurring.
While I agree that the trial court erred by not following Webb, I write to express my view that Webb went too far by undertaking the task of deciding whether the common law doctrine of necessaries should be modified to impose reciprocal liability.
In Webb, we agreed that it was best for the legislature to decide whether a husband and wife should be responsible for necessaries provided to each or whether neither should be liable for necessaries provided to the other. However, we then acknowledged that the legislature could "decide whether the choice of law we have declared in this case should remain as the law of Florida," and posed the question, "Why are we nonetheless declaring what the law is now?" 521 So.2d at 205. In responding to this question, the court suggests that failure to do so would ignore the constitutional violation, leave a hiatus in the law, and would, in effect, constitute a choice of law that neither spouse is responsible for the necessaries of the other. Thereupon, the court found it inevitable that there be a court-made choice of law.
It is true that in Webb, unlike Shands, we had to resolve an equal protection issue. However, I do not believe the presence of the equal protection issue required the court to create a new rule of law. Our holding that the common law doctrine violated the equal protection clause of the United States Constitution abrogated the doctrine. Stopping here would not have ignored the constitutional violation. The abrogation alone redressed the violation of the husband's right to equal protection by removing his unilateral liability.
Further, abrogation alone would not have left a hiatus in the law. We must remember that the doctrine was developed for the benefit of the wife and not for the benefit of her creditors. The reason underlying the creation of the doctrine has long since disappeared. Now that married women have the same legal capacity as married men, the abrogation of the doctrine does not leave married women without the means to obtain necessaries for themselves as was the case at the time the doctrine was created.
Finally, the fact that the abrogation results in neither spouse being liable for the necessaries of the other does not constitute a choice of law by the court. It is simply the result of this court's declaration that the common law doctrine cannot be given force in this state because it is inconsistent with the constitution of the United States. See § 2.01, Fla. Stat. (1993).
I do not question the authority of the court to modify a common law rule. Rather, my belief that we should not have modified the common law in Webb is based solely on the supreme court's discussion in Shands regarding deferral to the legislature. I recognize that the supreme court did not address an equal protection claim in Shands. However, the court did discuss the competing arguments regarding the alternative rules of liability espoused by the parties and acknowledged the inability of the judiciary to receive the type of public input that is required to resolve questions with broad social implications. The court then squarely addressed the question, "whether this court is the proper institution to resolve this issue," and concluded it was "`wiser to leave it to the legislative *686 branch.'" 497 So.2d at 646 (quoting Zorzos, 467 So.2d 305). I find nothing in Shands to suggest that this decision to defer to the legislature turned upon the absence of an equal protection question. It may be that, since the legislature has not acted, the supreme court will decide that the time has come for the court to act. However, in light of the discussion in Shands, I believe the supreme court removed that decision from the district courts of appeal.
Notwithstanding my disagreement with the approach taken in Webb, I agree that Webb must be applied as the controlling precedent in this district and, therefore, concur with the majority opinion.
PARKER, Judge, concurring.
I, like Judge Fulmer, believe that it would have been better if this court had limited its holding in Webb v. Hillsborough County Hospital Authority, 521 So.2d 199 (Fla. 2d DCA 1988) to the finding that the common law doctrine of necessaries violated the equal protection clause of the United States Constitution. I, however, recognize that this court is bound by Webb. As one of the three judges who decided Rydstrom v. Bayfront Medical Center, 632 So.2d 143 (Fla. 2d DCA 1994), I now believe that Rydstrom is contrary to the holding in Webb.
NOTES
[1] "At English common law, a woman constructively forfeited her identity because the law merged her identity with that of her husband in marriage. Once married, she was unable to own property, enter into contracts, or receive credit in her own name. She was totally dependent on her husband for supplying the necessaries for daily living. Courts developed the `doctrine of necessaries' to provide that a husband who is derelict in providing food, clothing, shelter, and/or medical services to his wife is liable to a third party who provides these necessaries to the wife. However, because the wife was thought legally incapable of incurring an obligation independent of her husband and because the husband was legally, and exclusively, responsible for providing the necessaries for the entire family unit, the wife had no reciprocal liability to a third party to provide necessaries to her husband. The United States adopted the English common law model of the marital relationship with its correlative duties after the Revolution." Mary Elizabeth Borja, Functions of Womanhood: The Doctrine of Necessaries in Florida, 47 U.Miami L.Rev. 397, 398 (1992) (citations omitted).

Section 2.01, Florida Statutes (1993), originally enacted in 1829, provides: "The common and statute laws of England which are of a general and not a local nature, with the exception hereinafter mentioned, down to the fourth day of July, 1776, are declared to be of force in this state; provided the said statutes and common law not be inconsistent with the Constitution and laws of the United States and the acts of the Legislature of this state."
[2] We acknowledge that this court may not have properly dealt with Webb in Rydstrom v. Bayfront Medical Center, 632 So.2d 143 (Fla. 2d DCA 1994).

The Third District did cite Webb as controlling precedent in North Shore Medical Center, Inc. v. Angrand, 527 So.2d 246 (Fla. 3d DCA 1988). However, this decision was later vacated because the hospital voluntarily dismissed the action while the appeal was pending.
[3] The husband asserted in his brief that the Fifth District decision conflicted with Webb, 521 So.2d 199, and North Shore, 527 So.2d 246.
[4] Waite v. Leesburg Regional Medical Ctr., Inc., 592 So.2d 683 (Fla. 1991).
[5] Karol Williams, The Doctrine of Necessaries: Contemporary Application as a Support Remedy, 19 Stetson L.Rev. 661 (1990).