(890 P.2d 349)
No. 71,247

BETHANY MEDICAL CENTER, *Appellee*, v. SAMIR NIYAZI, *Appellant*.

Opinion filed February 3, 1995.

*Max D. Goracke*, of Kansas City, Missouri, for appellant.

*Kurt S. Brack*, of Holbrook, Heaven & Fay, P.A., of Kansas City, for appellee.

Before RULON, P.J., BRAZIL and ROYSE, JJ.

BRAZIL, J.: Samir Niyazi appeals the judgment against him for his wife's medical treatment. He argues that the trial court abused its discretion in denying his motion for continuance, in denying his motion to file an answer out of time, and in striking his amended answer. He also contends there is not substantial competent evidence to support the judgment. We affirm.

Joyce Niyazi received treatment at Bethany Medical Center on two separate occasions in August and September 1985. The bill for both hospital stays was $45,418.56. The Niyazis made payments totaling $90, reducing the amount due to $45,328.56.

Niyazi argues that the trial court erred in denying his motion for continuance.

"The ruling on a motion for continuance is discretionary with the trial court, and an order denying a motion for continuance will not be disturbed on appeal unless there is a clear showing of an abuse of discretion. An abuse of discretion

for failure to grant a continuance exists only when no reasonable man would take the view adopted by the trial court." *Wilson v. American Fidelity Ins. Co.,* 229 Kan. 416, 422, 625 P.2d 1117 (1981).

Niyazi fails to show how the trial court's decision constituted an abuse of discretion. The January 10, 1994, trial date was set at a discovery conference on October 29, 1993. Niyazi's attorney was present. On Friday, January 7, 1994, Niyazi moved for a continuance. The motion stated Niyazi's attorney would be otherwise engaged in state court on January 10 and, in any event, the trial could not begin because Niyazi's motion for summary judgment had not been noticed for hearing and the trial could not start prior to a decision on the summary judgment motion.

The court spoke with a member of the law firm representing Niyazi on January 7 and told him that the trial would go on as scheduled. Niyazi's attorney rescheduled the conflicting court date but realized that he had a third conflict in the form of argument scheduled before the Eighth Circuit on the same day. Niyazi's attorney did not attend the January 10, 1994, trial. The attorney sent another member of his firm in his place, but the substitute attorney was not licensed to practice in this state. Niyazi, though subpoenaed, did not attend the trial.

Niyazi had more than two months between the discovery conference and the trial to resolve scheduling conflicts and instead waited until the last business day prior to trial. The trial court did not abuse its discretion in refusing to grant a continuance.

Niyazi argues on appeal that the trial court erred in denying his motion to file an answer out of time. He was not present to raise this argument at trial. An issue not raised before the trial court may not be considered on appeal. *Diversified Financial Planners, Inc. v. Maderak,* 248 Kan. 946, 948, 811 P.2d 1237 (1991).

Even if this court were to reach this issue and conclude that the trial court abused its discretion in denying the motion to file an answer out of time, it would have little bearing on the issues in this case. The trial court addressed the issues of whether Bethany pursued collection of the money from Joyce and whether Joyce had the resources to pay the debt herself. These are Niyazi's

only substantive issues on appeal. The balance of the issues raised in Niyazi's answer were effectively abandoned by his absence at trial.

Niyazi does not pursue the issue of the trial court's decision to strike his amended answer. This court will not consider issues not supported by argument or authority. *Enlow v. Sears, Roebuck & Co.*, 249 Kan. 732, 744, 822 P.2d 617 (1991).

Niyazi next argues that the trial court erred in finding that Bethany pursued payment of the hospital bill from Joyce. He argues that under *St. Francis Regional Med. Center, Inc. v. Bowles*, 251 Kan. 334, 836 P.2d 1123 (1992), Bethany was required to obtain a judgment against Joyce and make an attempt to collect that judgment prior to pursuing collection of the bill from him. This presents a question of law over which this court has unlimited review. *Gillespie v. Seymour*, 250 Kan. 123, 129, 823 P.2d 782 (1991).

In *Bowles*, the Kansas Supreme Court held that the common-law doctrine of necessaries then recognized in Kansas violated the Equal Protection Clause. The court expanded the doctrine to apply to husbands and wives equally. 251 Kan. at 340-41. The court closed the opinion with the following language:

"However, before a creditor may seek payment from a spouse the creditor must first pursue collection from the person who received the necessary goods or services. Only if the spouse who received the benefits has insufficient resources to satisfy the debt may the other spouse be liable. Such liability is not automatic; the second spouse may raise any defenses available." 251 Kan. at 341.

Niyazi argues that this language requires the creditor to obtain a judgment against the benefitting spouse and unsuccessfully attempt collection of the judgment prior to pursuing collection from the non-benefitting spouse. There is no indication that the *Bowles* court intended this meaning.

In *Bowles*, the court borrowed the requirement that a creditor must pursue collection from the benefitting spouse and find that the spouse has insufficient funds to pay the debt from two out-of-state cases: *Jersey Shore, Etc. v. Estate of Baum*, 84 N.J. 137, 417 A.2d 1003 (1980), and *Webb v. Hillsborough Cty. Hosp. Auth.*, 521 So. 2d 199 (Fla. Dist. App. 1988). An examination of theses cases is helpful to our analysis.

The court in *Jersey Shore* held that "a judgment creditor must first seek satisfaction from the income and other property of the spouse who incurred the debt. If those financial resources are insufficient, the creditor may then seek satisfaction from the income and property of the other spouse." 84 N.J. at 141. A judgment creditor is "[a] person in whose favor a money judgment has been entered by a court of law and who has not yet been paid." Black's Law Dictionary 844 (6th ed. rev. 1990). The language in *Jersey Shore* contemplates that a creditor first obtain a judgment and attempt to collect on it.

In *Webb*, the Florida court cited *Jersey Shore* and held that a husband and wife are responsible for necessary goods or services provided to the other. 521 So. 2d at 202. The court also created the requirement that "for purposes of pleading and proof by a creditor, a showing that the spouse to whom necessaries were provided is unable to pay therefor shall be a condition precedent to the liability of the other spouse for the necessaries." 521 So. 2d at 204.

The *Bowles* decision does not go into detail on the matter. The Kansas Supreme Court did not adopt *Webb's* requirement that the benefitting spouse's inability to pay be pled and proved as a condition precedent to collecting from the other spouse. The court also failed to use the term "judgment creditor" as the court did in *Jersey Shore*. Although the Kansas court borrowed the concept of limitation on the doctrine of necessaries, it did not go as far as the other states in implying that a judgment must first be obtained through use of the term "judgment creditor," nor did it state that the benefitting spouse's failure to pay must be affirmatively pled as part of a collection action against the other spouse.

Niyazi fails to designate any authority in support of his position. *Bowles* has not been interpreted or applied in any other Kansas case. There is nothing in the language of *Bowles* indicating that a creditor must first obtain a judgment against the debtor spouse prior to pursuing collection of the debt against the other spouse. To require a judgment would unfairly cut off creditors suing both spouses when, as here, the debtor spouse could not be served.

There is ample evidence to support the trial court's conclusion that Bethany otherwise pursued collection against Joyce. This court will not overturn the decision of the trial court if there is substantial competent evidence to support it. *Tucker v. Hugoton Energy Corp.*, 253 Kan. 373, 855 P.2d 929 (1993). Linda Davison, Bethany's credit manager, testified that Bethany sent the Niyazis billing statements and letters and called Joyce in attempts to collect the bill. At one point, Bethany filed a Medicaid claim on Joyce's account, but Joyce did not qualify for the benefits. Bethany turned the claim over to a collection agency.

Richard Dickerson, a supervisor at General Collection Service, testified that his agency received Joyce's account in January 1986. General Collection sent a number of letters to the Niyazi home and attempted to reach them by phone at home and at work. Dickerson testified that Joyce moved and changed her phone number frequently. The agency obtained a parent's address and tried unsuccessfully to contact Joyce through the parent. The agency ran credit bureau reports on Joyce and Niyazi over a period of years in an attempt to locate their current address or phone number. The agency sent letters to the addresses listed on the report hoping to receive a response.

Joyce responded to one of the letters on September 13, 1988. She told General Collection that she and Niyazi were separated but had reconciled. She would not give them any information concerning her whereabouts or her husband's employment. Joyce told the agency she would call back in a few days and arrange to make $100 payments on the debt. Joyce never contacted the agency again. Bethany filed suit on March 1, 1990.

There is substantial competent evidence that Bethany pursued collection of the debt from Joyce.

Finally, Niyazi argues that there was not substantial competent evidence to support the trial court's decision that Joyce did not have the resources to satisfy the debt. His argument is without support in the record.

Joyce did not have medical insurance to cover her treatment at Bethany. The hospital tried to obtain a medical card for Joyce, but she did not qualify for the benefits. Joyce indicated on her

admission forms that her occupation was "housewife." She indicated on the financial forms that Niyazi was responsible for the bill, although there is no evidence Niyazi himself signed the forms. On one financial form, Joyce checked a box which stated: "I am unable to pay this account and request consideration for assistance from Medicaid, Wyandotte County hospital fund, or other available financial resources." Further, there is no evidence in the record that Joyce worked outside the home before or after her divorce from Niyazi.

Niyazi points to Dickerson's testimony that Joyce told General Collection that she would arrange to make $100 payments on the debt to Bethany as proof that Joyce was able to pay the debt. Niyazi fails to mention that Joyce also told General Collection that she and Niyazi had reconciled, she was unemployed, and Niyazi was working three jobs.

There is substantial competent evidence that Joyce did not have the resources to pay the debt to Bethany.

Affirmed.