JOHN LOTT PHILLIPS, AS EXECUTOR, ETC., PLAINTIFF IN ERROR, VS. ANTONIA E. SANCHEZ, DEFENDANT IN ERROR.

1. Where the husband and wife live together and the husband is an invalid, practically helpless, nearly blind, and otherwise afflicted, requiring constant care and attention, not fitted for the transaction of ordinary business, his wife transacting his business for him, he having, besides other income, over forty dollars monthly from the rent of buildings beside a homestead and other property, and the domestic duties devolving upon the wife, together with the care and attention needed by the husband, required more labor than the wife was physically able to perform, and the work of the household could not be done without help, are circumstances constituting such a situation of affairs as authorizes the wife to engage the services of a domestic servant and bind the husband for the payment of the same

2. As a general proposition, the wife has no authority to bind the husband by contract unless she is his agent in fact. The well known exception to this rule is an incident to her right of support from her husband, and she is for that purpose his agent and can bind him to pay for such things as are necessary for the proper maintenance of herself and family; and domestic service in accordance with the means of the husband and social station of the family is such a necessity.

3. The question of the agency of the wife for the husband is not so much a question of law as of fact, provable as any other fact by circumstantial as well as positive evidence, with the burden resting upon the party alleging the agency. When a question arises whether a particular contract was within the scope of her authority as agent, such question becomes a mixed one of law and fact.

4. A hiring of a domestic servant by a wife under the circum-
stances stated in the first head-note is considered as a hiring
by the husband, and he is liable for the wages accruing there-
from.

5. The law regards with suspicion claims for labor or services when
made against the estates of deceased persons by near relatives.
The general presumption is that such services are rendered
gratuitously, but such presumption is strong or weak in pro-
portion to the nearness of the relationship. As between parent
and child it is strong because of the moral and legal obligation
imposed upon them in reference to each other, but as to other
relatives it grows weaker as the parent tree is receded from,
and each degree of retrogression therefrom lessens its force,
until that point in relationship is reached where all moral and
legal obligations are assimilated and stand upon the same basis
as to the rest of society.

6. In a suit against a defendant in his representative capacity as an
executor it is erroneous to enter an individual judgment
against him. In such suits, if plaintiff recover, judgment
should be given against the defendant as executor, etc., to be
made out of the goods, etc., of the estate of the deceased, and
not against the defendant generally.

Writ of Error to the Circuit Court for St. Johns
county.

The facts of the case are stated in the opinion of the
court.

*Jordan* and *Mac Williams*, for Plaintiff in Error.

*B. C. Rude* and *W. W. Dewhurst*, for Defendant in
Error.

LIDDON, J.:

The defendant in error was the plaintiff in the court
below, and sued the defendant (plaintiff in error) upon
a declaration, the substantial allegations of which are,
that "the plaintiff did, performed and bestowed work
and labor, care and diligence in and about the business

of him, the said John Lott Phillips, now deceased, and for him; and in superintending and maintaining his household, and as a domestic servant therein, and in nursing and attending him in his last sickness, all at the special instance and request of him, the said John Lott Phillips, now deceased, who became indebted to plaintiff; and in consideration of the work and labor, care and diligence done, performed and bestowed by the plaintiff as aforesaid, * * * did undertake and faithfully promise that he * * * would well and truly pay to the said plaintiff so much money as the plaintiff reasonably deserved to have;" and plaintiff avers that she reasonably deserved to have the sum of $1200. The declaration further alleged the death of the said John Lott Phillips, and the appointment and qualification of the defendant as executor, and the non-payment of the money claimed, etc.

The defendant, as executor, plead that his testator "never was indebted as alleged." A trial was had before A. J. Corbett, Esq., as referee, and judgment rendered for the plaintiff in the sum of $540 and costs of suit, from which judgment the defendant prosecutes a writ of error.

Twelve assignments of error are made upon the rulings and judgment of the referee. The first eight assignments are submitted without argument. Under the established rule prevailing in this court they are regarded as abandoned, and we do not take them into consideration in rendering an opinion in this case.

The ninth assignment is, that the judgment of the referee is against the evidence. The evidence in the case was conflicting; such conflict, however, was mostly upon minor points of the controversy. We think the evidence sufficient to sustain a judgment for the plaintiff. It is not necessary to summarize the testi-

mony. There are some matters of evidence, however, which require our attention. The evidence of the plaintiff shows that the contract was not made directly with the testator, but with his wife, with whom he was then living. No express authority is shown to have been given by the deceased to his wife to make the contract. It is contended by the plaintiff in error that the wife is not the agent of the husband, and has no implied authority, resulting from the marital relation, to bind him upon a contract of the character sued upon. To make the point clear it will be necessary to state in a condensed form the evidence bearing upon the making of the contract, which, however, is somewhat conflicting. Miss Sanchez, the plaintiff, is a sister of Mrs. Phillips. John Lott Phillips, the deceased, during the last two years or more of his life was an invalid and perfectly helpless. For years before that time he was able to be up a portion of the time, but had lost his eye sight almost entirely, and his wife transacted his business for him. Dr. Rainey, a physician, testified that during the last few years of his life the deceased was blind, had trouble in his legs, and was not fitted for the transaction of ordinary business, and at times required constant care and attention. The deceased owned a homestead and other buildings which yielded a monthly rental of over $40, besides other property which added to his income. Besides his other infirmities he had skin disease upon his face, hands and extremities which, at times, might be offensive, necessitating frequent changes of clothing. Mrs. Phillips kept boarders at her husband's house, and the domestic duties devolving upon her, together with the care and attention needed by her husband, required more labor than she was physically able to perform. The labor necessary for the work of

the household could not be done without help. At this time Mrs. Phillips requested the assistance of the plaintiff, and told her that she should be paid for it. Upon this last point there is no conflict. The plaintiff entered into the service in February, 1881, and remained until the death of the testator, August 25th, 1886, performing all kinds of domestic labor, and waiting upon and nursing the testator. Under these circumstances we think Mrs. Phillips had authority to engage the services of the plaintiff and bind her husband for the payment of the same. As a general proposition, the wife has no authority to bind the husband by contract unless she is his agent in fact. This well known exception to this general rule is an incident to her right of support from her husband, and she is for that purpose his agent, and can bind him to pay for such things as are necessary for the proper maintenance of herself and family. Domestic service in accordance with the means of the husband and social station of the family is a necessity. If the pleader had seen fit to include in his declaration a common count for work and labor done, in domestic service for the wife, and rested his case upon the implied legal liability of the husband to pay for such necessary service, he would have had a clearer case for his client, and a question for easy solution to us. An evolution of this elementary principle is the proposition that if a man places a wife at the head of his household, he thereby confers upon her the authority upon his responsibility to do those things necessary and proper for the well ordered regulation and management of the domestic affairs of the family. 2 Kent's ¡Comm. P. 179; 9 Am. & Eng. Ency. of Law, 839; Stewart on Husband and Wife, sec. 89; Pickering vs. Pickering, 6 N. H. 120, text 124. Having declared only upon an

express contract, the plaintiff must show that the wife, with whom the contract was made, was the agent of the husband whose estate is sought to be made liable. In accordance with the implication of law before stated, in view of the evidence recited, we think it sufficiently appears that the wife was the agent of the husband with authority to bind him to the contract sued upon. This question of agency of the wife for the husband is not so much a question of law as of fact, provable as any other fact by circumstantial as well as positive evidence, with the burden resting upon the party alleging the agency. Of course when the question arises whether a particular contract was within the scope of her authority as agent, the question becomes a mixed one of law and fact. Stewart on Husband and Wife, secs. 95, 97. In section 94 of the same work occurs the following: "* * * When the wife is her husband's agent in managing the household, her authority covers all such matters as wives in such a position usually attend to, and includes the right to do whatever is necessary, proper, or usual to effectuate the purposes of her agency. Thus, she may deal on his credit with butcher, baker, *etc.* She may give reasonable charity; she may extend usual hospitality; she may employ necessary servants; and may in fact procure on his credit all such things as belong to the class 'necessaries.' " A case precisely in point with the one under consideration, but the facts of which we deem it unnecessary to set forth, is White vs. Cuyler, 6 Term, 176, 1 Esp. 200, 3 Revised Rep. 147. Another standard author speaking upon the same subject says: "At common law, a married woman could not enter a contract binding upon her, and consequently could not assume the position of master. She could not take an apprentice for the reason that she could not bind her-

self to perform the conditions of the indentures, nor could she make a valid contract for the services of others except as the agent of her husband. In that capacity she could hire domestic servants, but not to bind herself for the payment of their wages, but all such hirings were treated as a hiring by the husband, and he alone was responsible for the wages accruing thereunder. * * * * * Where, however, the wife is not, by statute, clothed with the power of *feme sole*, in the special matter to which the services relate, or generally, she can not bind herself for the payment of the wages of a servant, and the question as to whether she can bind her husband therefor, as his agent, is a question of fact, depending. largely upon the nature and character of the services contracted for, and the position that they occupy toward each other. If she is living with him, as the head of his household, she may bind him for the wages of the domestic servants, but if they are not living together, the burden is upon the plaintff of showing that the wife had authority to make the contract, and in the case of services, that they were actually necessary, that she had not ample provision for her in view of his circumstances and her own social position." Wood's Master and Servant (2nd ed.), sec. 35.

In the case before us the plaintiff, besides the presumption raised by law from the general management of the household by the wife, offered evidence that the wife, owing to the physical infirmity of the husband, was accustomed to transact his business for him. This evidence as to the agency of the wife adds to the presumption of law a strict presumption of fact.

In what has been said here we have not been unmindful that the law regards with suspicion claims of

the character in question here, when made against the estates of deceased persons by near relatives. In such cases it is said the evidence must be clear and unequiv-ocal. Speaking upon this subject, Wood's Master and Servant, § 72, says " * * * The hazzard incident to throwing the doors of a court of law open to easy recovery in actions of this character is too great, and affords too great temptations to the perpetration of fraud upon estates of deceased persons, and opens the door to perjury too freely on the part of persons who, by reason of the relation in which they stood to the deceased in his life-time, often conceive an idea that, morally, he was bound to make a more ample provision for them, pecuniarily, than to others, who have rendered no assistance in the acquisition of the estate, or have done nothing to solace or comfort the deceased in his last sickness; and, the deceased himself in his will having failed to meet their expectations, or in the absence of a will, the law failing to notice the validity of this moral obligation, they often seek redress in courts of law by instituting claims for services rendered which were really gratuitous, and seek to establish them by loose declarations made by the deceased in casual conversations with neighbors or friends, and thus to right a real or fancied wrong. This class of actions has always been regarded unfavorably by the courts. * * * " The principles in the extract quoted have special application to cases of such claims made by near relatives or inmates of the family of the deceased. The presumption, however, that services rendered by one near relative to another, he being an inmate of the family, are rendered gratuitously, is strong or weak in proportion to the nearness of the relationship. As between parent and child it is strong, because of the moral and legal obligations imposed upon them in

reference to each other, but as to other relatives it grows weaker as the parent tree is receded from, and each degree of retrogression therefrom lessens its force, until that point in relationship is reached where all moral and legal obligations are assimilated and stand upon the same basis as to the rest of society.   Wood's Master and Servant, § 76, pp. 142-3.   In the case at bar the plaintiff was no blood relative of the deceased.   There is no evidence whatever in the record that she was under any obligations of gratitude to him for any kindness or favors done her.   She is not shown to have ever lived with the decedent until employed by the wife to assist her in her domestic duties.   There was direct evidence as to an agreement that her services should be paid for.   The party who is alleged to have made the agreement is not called as a witness on this point, and the evidence of the plaintiff as to this matter is uncontradicted.   The referee having found upon the facts for the plaintiff, we do not feel justified in disturbing the finding upon the evidence.

The last assignment of error relates to the form of the judgment entered in the case.   It is alleged that the judgment is against the defendant individually, instead of in the representative capacity in which he is sued.   The judgment, after reciting the trial, order of reference, etc., proceeds as follows:   "It having been found that the said defendant, as executor of John Lott Phillips, deceased, is indebted to said plaintiff in manner and form as alleged by plaintiff in the sum of five hundred and forty dollars, and that said plaintiff is entitled to recover of said defendant her damages, together with the costs herein, and the charges in this behalf expended; therefore, it is considered, ordered and adjudged by said referee that plaintiff do recover of said defendant the just and full

sum of five hundred and forty dollars for her damages in said cause, together with the further sum of three dollars and ninety-one cents, fees and costs in this suit, making in all the sum of five hundred and forty-three dollars and ninety-one cents (543.91). A. J. Corbett, referee.''

The judgment is wanting in the essential requisites of a judgment against an executor, and the objection to it is well taken. A similar judgment was considered by this court in the case of Cooper vs. Livingston, 19 Fla. 684, text 694–5, and the court said: ''The judgment in this case is entered against the defendant, 'that the plaintiff have and recover of and from the defendant,' the damages and costs. This is not a proper judgment against the defendant Cooper, as executor, nor is it to be satisfied of the goods, etc., of the decedent. In actions against executors and administrators judgment should be given, if plaintiff recover, against the defendant as executor, etc., to be made out of the goods, etc., of the estate of the deceased, and not against the defendant generally.'' Other authorities are then cited.

The judgment of the Circuit Court is reversed, and the cause remanded for such further proceedings as may be authorized by law.