668 So.2d 175 (1995)
Barbara E. CONNOR, Petitioner,
v.
SOUTHWEST FLORIDA REGIONAL MEDICAL CENTER, INC., etc., Respondent.
No. 84670.
Supreme Court of Florida.
December 21, 1995.
Rehearing Denied February 16, 1996.
Jon D. Parrish and Thomas B. Garlick of Harter, Secrest & Emery, Naples, for Petitioner.
James G. Decker of Decker and Smith, P.A., Fort Myers, for Respondent.
GRIMES, Chief Justice.
We have for review Southwest Florida Regional Medical Center, Inc. v. Connor, 643 So.2d 681 (Fla. 2d DCA 1994), which certified conflict with the following district court decisions: Waite v. Leesburg Regional Medical Center, Inc., 582 So.2d 789 (Fla. 5th DCA), review denied, 592 So.2d 683 (Fla.1991); Heinemann v. John F. Kennedy Memorial Hospital, 585 So.2d 1162 (Fla. 4th DCA 1991); Faulk v. Palm Beach Gardens Community Hospital, Inc., 589 So.2d 1029 (Fla. 4th DCA 1991); and Halifax Hospital Medical Center v. Ryals, 526 So.2d 1022 (Fla. 5th DCA 1988). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
Southwest Florida Regional Medical Center sued Kenneth Connor and his wife Barbara Connor in 1993 for payment of medical services the hospital had rendered to Kenneth. The trial court dismissed the hospital's complaint against Barbara Connor on the ground that she had not executed an agreement to pay for the services rendered to Kenneth Connor. In so doing, the trial court declined to expand the doctrine of necessaries to hold the wife responsible for her husband's medical bills. The district court of appeal reversed and remanded, thereby giving the hospital a cause of action against Barbara Connor.
This case involves what is known as the doctrine of necessaries. At common law, a married woman's legal identity merged with that of her husband, a condition known as coverture. She was unable to own property, enter into contracts, or receive credit. A married woman was therefore dependent upon her husband for maintenance and support, and he was under a corresponding legal duty to provide his wife with food, clothing, shelter, and medical services. The common law doctrine of necessaries mitigated the possible effects of coverture in the event a woman's husband failed to fulfill his support obligation. Under the doctrine, a husband was liable to a third party for any necessaries that the third party provided to his wife. Because the duty of support was uniquely *176 the husband's obligation, and because coverture restricted the wife's access to the economic realm, the doctrine did not impose a similar liability upon married women.
This state recognized the doctrine of necessaries in Phillips v. Sanchez, 35 Fla. 187, 17 So. 363 (1895). However, the disability of coverture was later abrogated. Ch. 21977, Laws of Fla. (1943); see § 708.08, Fla.Stat. (1993). Further, the responsibilities for alimony between husband and wife are now reciprocal. § 61.08, Fla.Stat. (1993).
The first case to address the question of whether the obligations under the doctrine of necessaries should run both ways was Manatee Convalescent Center, Inc. v. McDonald, 392 So.2d 1356 (Fla. 2d DCA 1980). In holding a wife liable for the necessaries of her husband, the court stated:
Changing times demand reexamination of seemingly unchangeable legal dogma. Equality under law and even handed treatment of the sexes in the modern market place must also carry the burden of responsibility which goes with the benefits.
Id. at 1358. Accord Parkway Gen. Hosp., Inc. v. Stern, 400 So.2d 166 (Fla. 3d DCA 1981). However, in Shands Teaching Hospital & Clinics, Inc. v. Smith, 497 So.2d 644 (Fla.1986), this Court declined to hold a wife liable for the husband's hospital bills and disapproved Parkway General Hospital and Manatee Convalescent Center. In reaching our decision, we first stated that it was an anachronism to hold the husband responsible for the necessaries of the wife without also holding the wife responsible for the necessaries of her husband. We also acknowledged that the respective arguments of both parties had merit. However, we concluded that because the issue had broad social implications and the judiciary was the branch of government least capable of resolving the question, it was best to leave to the legislature the decision of whether to modify the common law doctrine of necessaries. In a footnote we stated that the issue of whether it was a denial of equal protection to hold a husband liable for a wife's necessaries when a wife was not liable for a husband's necessaries was not before us.
Following our opinion in Shands, an equal protection issue was raised by a husband who suffered a judgment which required him to pay his wife's hospital bill. Webb v. Hillsborough County Hosp. Auth., 521 So.2d 199 (Fla. 2d DCA 1988). The court ruled that the doctrine of necessaries remained viable so as to obligate a husband to pay for his wife's necessaries and went on to hold that the duty was reciprocal between spouses. In two subsequent decisions, the Fourth District Court of Appeal disagreed with Webb and held that a wife could not be held responsible for her husband's necessaries. Faulk; Heinemann. In the meantime, the Fifth District Court of Appeal held that a husband continues to be liable for his wife's necessaries. Waite; Ryals.
The case before us today is in essentially the same posture as Shands. Yet, we are faced with a series of cases in which the parties agree that husbands and wives must be treated alike but disagree over whether the doctrine of necessaries should be applied to both spouses or simply abolished. Therefore, we have concluded that we must now address this issue in the context of equal protection considerations. Mrs. Connor contends that with the removal of coverture, the doctrine of necessaries is no longer justifiable because wives are now freely able to enter into contracts and obtain their own necessaries. Southwest posits that while the initial reason for the doctrine has disappeared, it now serves the important function of promoting the partnership theory of marriage and should be expanded so that both men and women are liable to third-party creditors who provide necessaries to their respective spouses.
The courts of other states have split on the proper remedy to adopt. Some have abrogated the doctrine entirely, preferring to defer to the legislature. See, e.g., Emanuel v. McGriff, 596 So.2d 578 (Ala.1992); Condore v. Prince George's County, 289 Md. 516, 425 A.2d 1011 (1981); Schilling v. Bedford County Memorial Hosp., Inc., 225 Va. 539, 303 S.E.2d 905 (1983). Others have extended the common law doctrine to apply to both sexes. See, e.g., Bartrom v. Adjustment Bureau, Inc., 618 N.E.2d 1 (Ind.1993); St. Francis *177 Regional Medical Ctr., Inc. v. Bowles, 251 Kan. 334, 836 P.2d 1123 (1992); Jersey Shore Medical Ctr.-Fitkin Hosp. v. Estate of Baum, 84 N.J. 137, 417 A.2d 1003 (1980); North Carolina Baptist Hosps., Inc. v. Harris, 319 N.C. 347, 354 S.E.2d 471 (1987); Landmark Medical Ctr. v. Gauthier, 635 A.2d 1145 (R.I.1994); Richland Memorial Hosp. v. Burton, 282 S.C. 159, 318 S.E.2d 12 (1984).
Legislative action in this area has been just as diverse. Oklahoma and Kentucky have codified the doctrine in its original common law form, while the Georgia Legislature repealed the doctrine in 1979. Okla.Stat.tit. 43, § 209 (1994); Ky.Rev.Stat.Ann. § 404.040 (Baldwin 1994); 1979 Ga.Laws 466, 491. Somewhere in the middle of these two extremes are those jurisdictions that have retained the doctrine in a modified form. For example, North Dakota imposes joint and several liability for debts incurred by either spouse for the necessaries of food, clothing, fuel, and shelter, but excludes medical care. N.D.Cent.Code § 14-07-08 (1993).
The fact that courts and other legislatures have treated this problem in different ways illustrates the lack of consensus regarding the doctrine's place in modern society and reinforces the position we took in Shands. Yet, our legislature has not chosen to address this issue, and we know of no circumstances occurring since our decision in Shands which would suggest that we were wrong in refusing to hold the wife liable for the husband's necessaries. Because constitutional considerations demand equality between the sexes, it follows that a husband can no longer be held liable for his wife's necessaries. We therefore abrogate the common law doctrine of necessaries, thereby leaving it to the legislature to determine the policy of the state in this area. We do not make a judgment as to which is the better policy for the state to adopt. We merely leave it to the appropriate branch to decide this question.
We quash the decision below. We approve the decisions in Faulk and Heinemann and disapprove those in Webb, Waite, and Ryals.
It is so ordered.
SHAW, KOGAN, HARDING and ANSTEAD, JJ., concur.
OVERTON, J., dissents with an opinion, in which WELLS, J., concurs.
OVERTON, Justice, dissenting.
I dissent. The common law doctrine of necessaries was born of the need to provide a legal means to protect and enforce the moral terms of the marital obligation. I find that the doctrine is just as important today, under the partnership theory of marriage, as it was when the doctrine was created under the unity theory of marriage. In this day and age, we should not weaken the obligations of marriage by eliminating the spousal duty to care for one another. However, that is exactly what the majority opinion does, and, by doing so, it places this Court in the minority of state supreme courts that have addressed this issue.
I agree that the common law doctrine of necessaries in its present form violates the equal protection clause by imposing a duty of spousal support only on the husband. However, unlike the majority, I conclude that this Court, as a matter of policy, should extend the doctrine to apply to both spouses rather than abrogate it entirely. In doing so, I would make the spouse who incurred the debt primarily liable.
The majority's decision to abrogate the doctrine is premised on the theory that altering the doctrine would have broad social implications and, as such, is a task best left to the legislature. If the legislature disagreed with the policies behind the doctrine of necessaries, it has had ample opportunity during the last one hundred years to abolish the doctrine. Instead, the legislature has left the doctrine intact. This legislative inaction implies an agreement with the current, judicially-created policy regarding the doctrine of necessaries. The majority's abrogation of the doctrine of necessaries appears to shift the policy of this state by, in effect, requiring each spouse to take care of himself or herself. It also reduces the legal obligations of the marriage contract.
I believe that, because the doctrine's incorporation into Florida's common law was a *178 matter of judicial policy when the doctrine was adopted in 1895, today's decision regarding whether to extend the doctrine to both spouses is a matter of judicial policy. This Court should decide this case on its merits rather than by abrogating the doctrine and unnecessarily placing the responsibility on the legislature to reinstate a long-standing policy of the state established by this Court.
The majority's determination that a lack of consensus exists among other states regarding the proper role of the doctrine of necessaries is, in my view, incorrect. A national survey of how state courts have resolved this issue reveals that this Court's decision to abrogate the doctrine places Florida in the minority of jurisdictions that have considered this issue. Approximately sixteen state courts have addressed the issue of whether the doctrine of necessaries should be modified or abrogated. The majority of those state courts have extended the doctrine to apply to both spouses. Only four have abrogated the doctrine and placed the responsibility on the legislature to reinstate the doctrine through codification.
The twelve state courts that have extended the doctrine to both spouses have done so in three ways. First, two courts have extended the doctrine to apply to both spouses equally by imposing joint and several liability on each spouse. North Carolina Baptist Hosps., Inc. v. Harris, 319 N.C. 347, 354 S.E.2d 471 (1987); Kilbourne v. Hanzelik, 648 S.W.2d 932, 934 (Tenn.1983). Second, eight of the state courts extending the doctrine of necessaries to both spouses have imposed primary liability on the spouse who incurred the debt and secondary liability on the other spouse. Bartrom v. Adjustment Bureau, Inc., 618 N.E.2d 1, 8 (Ind.1993); St. Francis Regional Medical Center, Inc. v. Bowles, 251 Kan. 334, 836 P.2d 1123, 1128 (1992); Medical Servs. Ass'n v. Perry, 819 S.W.2d 82, 83 (Mo.Ct.App.1991) (noting harmony with other district courts in Missouri); Cheshire Medical Center v. Holbrook, 140 N.H. 187, 663 A.2d 1344, 1347 (1995); Jersey Shore Medical Center-Fitkin Hosp. v. Estate of Baum, 84 N.J. 137, 417 A.2d 1003, 1010 (1980); Medical Business Assocs., Inc. v. Steiner, 183 A.D.2d 86, 588 N.Y.S.2d 890 (1992) (citing Our Lady of Lourdes Memorial Hosp., Inc. v. Frey, 152 A.D.2d 73, 548 N.Y.S.2d 109 (1989) for support); Landmark Medical Center v. Gauthier, 635 A.2d 1145, 1151 (R.I.1994); Richland Memorial Hosp. v. Burton, 282 S.C. 159, 318 S.E.2d 12, 13 (1984). Creditors in these states must first seek compensation from the spouse who incurred the debt and may only turn to the other spouse if the creditor can show that the spouse who incurred the debt is unable to fulfill the obligation. See Jersey Shore, 417 A.2d at 1010. Third, two courts have extended the doctrine of necessaries by imposing primary liability on the husband and secondary liability on the wife. Ohio State Univ. Hosp. v. Kinkaid, 48 Ohio St.3d 78, 549 N.E.2d 517 (1990) (noting that the legislature extended the doctrine to both parties); Marshfield Clinic v. Discher, 105 Wis.2d 506, 314 N.W.2d 326 (1982). These last two courts reasoned that, although the doctrine should be extended to both spouses, a substantial public interest remains in protecting wives from primary liability.
Only four state courts have abrogated the doctrine of necessaries. Emanuel v. McGriff, 596 So.2d 578, 580 (Ala.1992); Condore v. Prince George's County, 289 Md. 516, 425 A.2d 1011, 1019 (1981); Govan v. Medical Credit Servs., Inc., 621 So.2d 928 (Miss. 1993); Schilling v. Bedford County Memorial Hosp., Inc., 225 Va. 539, 303 S.E.2d 905, 908 (1983). Courts in this category have uniformly held that expanding the doctrine of necessaries to both spouses is "a matter of such fundamental policy that it should be determined by the legislature." Condore, 425 A.2d at 1019. A state legislature subsequently responded to this invitation by amending a statute to provide that "[t]he doctrine of necessaries as it existed at common law shall apply equally to both spouses." Va.Code Ann. § 55-37 (Michie 1995) (responding to the abrogation of the doctrine by Schilling, 303 S.E.2d at 908).
Two state supreme courts have declined to extend or abrogate the doctrine of necessaries. Hitchcock Clinic, Inc. v. Mackie, 160 Vt. 610, 648 A.2d 817, 819 (1993); Medlock v. Fort Smith Serv. Fin. Corp., 304 Ark. 652, 803 S.W.2d 930, 931 (1991). These courts *179 simply reaffirmed the common law doctrine without discussing the possible constitutional problems addressed by other courts.
In the instant case, the majority relies on our decision in Shands Teaching Hospital & Clinics, Inc. v. Smith, 497 So.2d 644 (Fla. 1986), to place Florida among a minority of jurisdictions that have refused to extend the doctrine of necessaries to both spouses. However, in Shands, this Court specifically refused to address whether constitutional considerations required extension of the doctrine to both spouses. Id. at 646. Since this Court failed to reach the equal protection argument in Shands, the majority's reliance on that case is misplaced, and neither the reasoning nor the holding of that case should be controlling.
I would follow the majority of other jurisdictions by extending the doctrine of necessaries to both spouses, and I would make the spouse who incurred the obligation primarily liable. I reach this conclusion because, while Florida has moved from a unity theory of marriage to a partnership theory of marriage, the partnership theory of marriage is fully consistent with the underlying principles of the doctrine of necessaries.
Interestingly, the case in which we established the doctrine, Phillips v. Sanchez, 35 Fla. 187, 17 So. 363 (1895), involved circumstances where the wife, acting as an agent for the husband, incurred obligations for the care of her invalid husband and the claim was against his estate. Like Phillips, our present society includes many circumstances where the doctrine furthers a recognition of spousal support. For example, in many households, both spouses are employed but only one spouse provides the medical coverage for the entire household. Under these circumstances, the extension of the doctrine fits like a glove by requiring the more able spouse to care for the needs of the household. I submit that the application of the doctrine is just as necessary in today's society as it was one hundred years ago. It is my strong belief that we should not repeal this doctrine; we should simply refine it to meet equal protection requirements, and, by doing so, strengthen the marital obligation.
This Court, in other areas of the law, has modified common law policies to reflect the partnership theory of marriage and to apply it in a proper way to today's society. For example, in Gates v. Foley, 247 So.2d 40 (Fla.1971), this Court extended to a wife the right to recover damages due to loss of consortium. Before that time, only a husband could recover such damages. In reaching our conclusion in Foley, we stated that "the unity concept of marriage has in a large part given way to the partner concept whereby a married woman stands as an equal to her husband in the eyes of the law." Id. at 44. As Justice Harding recently acknowledged in Waite v. Waite, 618 So.2d 1360, 1362 (Fla. 1993) (Harding, J., specially concurring), the marital relationship is designed to be "a special relationship between partners who share love, common interests, concerns, hopes, and endeavors." (Emphasis added). How can there be a partnership in marriage where neither spouse is obligated to take care of the necessaries of the other spouse?
Under the partnership theory of marriage, each spouse is entitled to share in the fruits of the marital partnership. This concept is reflected by equitable distribution principles recognized by this State. Canakaris v. Canakaris, 382 So.2d 1197, 1203-04 (Fla. 1980) (holding that spouses should be treated as partners when considering the equitable distribution of the marital assets upon divorce); Thompson v. Thompson, 576 So.2d 267, 268 (Fla.1991) (holding that professional goodwill obtained after the formation of the marriage partnership belongs to the marriage partnership). The majority's decision to abrogate the common law doctrine of necessaries departs from the partnership theory of marriage and eliminates a common law doctrine even though the policy and need for the doctrine continue to exist.
As we recognized in Via v. Putnam, 656 So.2d 460 (Fla.1995), "`[t]he institution of marriage has been a cornerstone of western civilization for thousands of years and is the most important type of contract ever formed.'" Id. at 465 (quoting In re Estate of Yohn, 238 So.2d 290, 296 (Fla.1970) (Boyd, J., specially concurring)) (holding that pretermitted spouse's interest was not subject to *180 the interests of the testator's children, who obtained beneficiary status under the mutual wills of their parents). Although the Via case does not discuss the doctrine of necessaries, the case illustrates this Court's commitment to spousal support. This Court should again reaffirm this long-standing commitment requiring spouses to care for one another by extending the doctrine of necessaries to apply to both spouses.
I believe that extending the doctrine of necessaries to apply to both spouses is the best, most logical, and least destructive method of altering the doctrine to comply with the equal protection clause. I would make the spouse who incurred the obligation primarily responsible. Extending the doctrine in this manner would further both a long-standing obligation of spousal support and the needs of our changing society. It would also advance a policy that acknowledges the partnership theory of marriage and the social value inherent in requiring marital partners to support one another.
WELLS, J., concurs.