**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 24, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

MILO L. SHELLITO; SHARLYN K.
SHELLITO,

        Petitioners - Appellants,

v.

COMMISSIONER OF INTERNAL
REVENUE,

        Respondent - Appellee.

No. 10-9002
(United States Tax Court)
(T.C. No. 10223-06)

**ORDER AND JUDGMENT**[*]

Before **PORFILIO**, **ANDERSON**, and **O'BRIEN**, Circuit Judges.

        After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

     [*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Milo and Sharlyn Shellito, husband and wife, appeal a decision by the United States Tax Court upholding income tax deficiencies of $3,995 and $6,947, respectively, for the years 2001 and 2002. During those years the Shellitos fully deducted their family medical expenses not covered by insurance, plus insurance premiums, by claiming such amounts on Schedule F (Profit or Loss from Farming) of their joint Form 1040 Income Tax return as an ordinary business expense for an employee benefit program. The business expense was justified by designating Mrs. Shellito as her husband's employee for the work she did on their farm, then, pursuant to a medical reimbursement plan for employees, reimbursing her for the payment of out-of-pocket medical expenses and premiums for the entire family, including her employer-husband.

The question for business expense deduction purposes is whether Mrs. Shellito was a bona fide employee receiving compensation for her services. The Tax Court held she was not a bona fide employee because, among other things, her purported compensation as an employee was illusory. For the reasons stated below, we vacate the decision of the Tax Court and remand the case for further consideration.

## BACKGROUND

Mr. and Mrs. Shellito reside on a farm in Kansas. The farming operation conducted there consists of approximately 2300 acres of leased and 47 acres of

deeded land used to raise around 200 head of cattle and grow wheat, milo, corn and soybeans.  Mr. Shellito commenced farming in 1978, and was joined by Mrs. Shellito in 1982.  Mr. Shellito testified at trial that the farm was always his and was so regarded by other farmers in the area. In other words, he did not regard Mrs. Shellito as having a proprietary interest in the farm.

In that connection Mr. Shellito testified that he owned all the numerous pieces of equipment used in the farm operation, including the combines and tractors, as evidenced by bills of sale in his name, and his leased land was solely in his name.  For example, in 1990 he leased, in his own name, approximately 1400 acres of land, plus 80 head of cattle, and numerous pieces of farm equipment (five tractors, one combine, two discs, two hoe drills with trailer, one cultivator, one planter, one plow, two V-blades, one grinder, one auger, two swathers, one baler, two trucks and two trailers) from his father, and that lease was renewed through and including the years in question in this case, 2001 and 2002.  Stip. of Facts, ¶ 7; Ex. 13-J.  He also testified that he made all the decisions regarding the farm operation, including expansion and equipment acquisition, and that he directed his wife in the work she did on the farm.  The Shellitos filed joint form 1040 income tax returns for 2001 and 2002, together with Schedule F "Profit and Loss From Farming" forms reporting all farm income and expenses and listing Mr. Shellito as the sole proprietor.

Mrs. Shellito has worked on the farm continuously since approximately 1982, putting in about 40 hours per week on average. Among her other duties she has assisted with planting and harvesting crops, including the operation of tractors and equipment, feeding and caring for the large cattle herd, building and repairing fences, maintaining and performing basic repairs of equipment, running necessary farm errands, handling the farm records and books, and performing all the other tasks relating to the farm. She testified that this work was done for her husband, that he made all the business and operating decisions and did so without her input or consent, that he directed her in her work including means, methods and what was to be accomplished, that the equipment she used belonged to him, and that she did not regard herself as a business partner. On their joint income tax returns for 2001 and 2002 she listed her occupation as housewife.

Prior to and during 2001-02, the Shellitos handled their business and personal income and expenses through a single, joint checking account on which both of them wrote checks. They also financed the farming operations with multiple loans from the Smith County State Bank and Trust Company on promissory notes signed by both Mr. and Mrs. Shellito (one was signed by Mrs. Shellito alone). Mr. Shellito acknowledged that the loans would not have been granted without Mrs. Shellito's signature, and that the farming business would have been impossible without the loans. The only real property owned by the Shellitos, 47 acres, is, according to Mr. Shellito, held in joint tenancy, Aplt. App.

-4-

at 263, and Mrs. Shellito has an ownership interest in three pick-up trucks used in the farming operations. Additionally, the Shellitos were both named on insurance policies covering the farm and its equipment.

In 2001, the Shellitos, on the advice of their accountant, recast their business structure to take advantage of the tax deduction businesses could take by having a medical reimbursement plan for employees.[1] For this purpose they purchased a commercially marketed package for family farmers, the AgriPlan/BizPlan[2], which provided a preprinted medical reimbursement plan, application, year-end administrative services relative to amounts allowed as a deduction under the plan, and advice for implementation.

To implement this arrangement the Shellitos signed a brief employment agreement prepared by their accountant, dated May 29, 2001. The agreement

---

[1]During 2001, a taxpayer who was self-employed was permitted to deduct only 60% of the cost of health insurance premiums paid for himself, his spouse, and his family. I.R.C. § 162(*l*)(1). That percentage increased to 70% in 2002, and 100% for years 2003 and after. Id. Also in 2001 and 2002 (and continuing to the present), any unreimbursed medical expenses that a taxpayer paid out of pocket could only be deducted to the extent that they exceeded 7.5% of the taxpayer's adjusted gross income. Id. § 213(a). Amounts paid to an employee pursuant to a healthcare reimbursement plan, however, were fully deductible as a business expense. Id. § 162(a)(1); Treas. Reg. § 1.162-10(a).

[2]For the years in issue AgriPlan (for small farms) and BizPlan (for small businesses) were divisions of Total Administrative Services Corporation. Aplt. App. at 54. Although it would seem on the surface that only the AgriPlan was adopted here, the combined references, AgriPlan/BizPlan or AgriPlan/BIZPLAN, are commonly used, and no information contained in the record sheds further light on the subject.

declared that Mr. Shellito was employing his wife as a hired hand to do farm work he directed her to do; but it did not specify either hours or compensation. Aplt. App. at 318. Mrs. Shellito concurrently opened an individual checking account from which she commenced thereafter to pay the family's (including her employer-husband's) medical bills not covered by insurance, as well as insurance premiums.[3] Mr. Shellito paid her $100 per month as wages as well as reimbursing her for the payment of medical bills and expenses out of her account. He made these payments to her by checks signed by him, on their joint checking account, for deposit into her individual account.

Mrs. Shellito kept a daily log of her hours spent in farm work, although not specifying what work was done. The log totals showed 1,169 hours worked after May 29, in 2001, and 2,226 hours in 2002. In addition, the couple kept accurate tax records reflecting this arrangement, deducting and reporting payroll taxes on the $100/monthly wages and issuing W-2's. Thus, they reported wages ($700 plus $54 in employment taxes in 2001, and $1200 plus $92 in employment taxes in 2002) as income on their joint income tax returns—offset by like amounts ($700 and $1200) taken as expenses for labor hired on Schedule F. Finally, the couple transmitted annually to AgriPlan/BizPlan detailed year-end accountings of

---

[3]Some out-of-pocket medical bills and some insurance premiums continued to be paid out of the couple's joint checking account, but, as with other discrepancies throughout this case, we do not pursue the point because our decision is not affected by those facts.

-6-

amounts claimed for medical expense and insurance premium reimbursements, and they received back a year-end report indicating the total allowable benefit amount which they then reported as a business expense deduction for "Employee benefit programs" on Schedule F attached to their Form 1040 for each year. The amount of that deduction for 2001 was $15,593; for 2002, it was $20,897.

The Commissioner issued a notice of deficiency to the Shellitos with respect to their 2001 and 2002 tax liabilities disallowing the foregoing amounts as business expense deductions. After various adjustments, the resulting deficiency in taxes amounted to $3,995 for 2001 and $6,947 for 2002.[4] The Commissioner also imposed an accuracy-related penalty under I.R.C. § 6662(a) in the amount of $1,389 for 2002. Following a trial, the Tax Court upheld the Commissioner's determination as to the employee benefit plan deductions, but found for the taxpayers on the proposed penalty. The Commissioner does not appeal that ruling.

---

[4]The Shellitos agreed to $7,847 in adjustments for 2001, leaving $7,057 in issue before the Tax Court for that year. The Commissioner, contrary to his position on other amounts, allowed a deduction of $689 in both 2001 and 2002 for insurance premiums paid for a health insurance policy in Mrs. Shellito's name, and allowed the deductions for wages. And the Commissioner allowed $2,898 and $3,646, respectively, as deductions for health insurance pursuant to I.R.C. § 162(*l*). There are various discrepancies in the figures throughout the case. They are not material to our decision.

## DISCUSSION

The Tax Court held that Mrs. Shellito was not her husband's employee because she was not compensated. The court reasoned that Mrs. Shellito obtained no economic benefit from funds paid into her individual account from the couple's joint checking account due to the fact that she is presumed to be an equal owner in the funds in that account. And, further, that her payment of medical expenses from her individual checking account was simply an assumption of her husband's liability under state law for the family's medical expenses. Accordingly, the court concluded that the form of the transactions in question did not reflect their substance and did not give rise to a true employment relationship. As additional support for its conclusion, the court pointed to the fact that Mrs. Shellito had done the same farm work for nineteen years without compensation. The Shellitos argue on appeal that the Tax Court failed to undertake a common law agency analysis to determine whether an employer-employee relationship existed, and erred in its "no compensation" reasoning.

### A.

"We review the Tax Court's factual findings under the clearly erroneous standard and review its legal conclusions de novo." Wheeler v. Comm'r., 521 F.3d 1289, 1291 (10th Cir. 2008) (further quotation omitted). Whether a person is an employee is a question of fact which we review for clear error. See Marvel

-8-

v. United States, 719 F.2d 1507, 1515 (10th Cir. 1983); Hockett v. Sun Co., Inc. (R&M), 109 F.3d 1515, 1525-26 (10th Cir. 1997); Weber v. Comm'r., 60 F.3d 1104, 1110 (4th Cir. 1995). But, we review de novo the standards and tests governing the factual analysis, and the application of the law to the facts. Whether the form over substance, economic substance, or similar doctrines apply, is a mixed question of fact and law; but the ultimate determination that such a doctrine applies is a matter of law which we review de novo. Sala v. United States, 613 F.3d 1249, 1252 (10th Cir. 2010). See Frank Lyon Co. v. United States, 435 U.S. 561, 581 n.16 (1978) ("The general characterization of a transaction for tax purposes is a question of law . . . ."); Keeler v. Comm'r., 243 F.3d 1212, 1217 (10th Cir. 2001) (noting that the ultimate determination of whether a transaction lacks economic substance is a question of law.); James v. Comm'r., 899 F.2d 905, 909 (10th Cir. 1990) ("[W]e review de novo the ultimate characterization of the transactions as shams.")[5]

---

[5]But see Nicole Rose Corp. v. Comm'r., 320 F.3d 282, 284 (2d Cir. 2003) (treating the ultimate determination of whether a transaction lacks economic substance as a question of fact); and Yosha v. Comm'r., 861 F.2d 494, 499 (7th Cir. 1988) ("The question whether a particular transaction has economic substance, like other questions concerning the application of a legal standard to transactions or events, is governed by the clearly erroneous standard.").

**B.**

Business expense deductions for medical reimbursement payments to an employee are governed by § 162(a) and (a)(1) of the Internal Revenue Code and accompanying treasury regulations. They provide as follows:

**162. Trade or business expenses**

**(a) In general.** — There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including —
**(1)** a reasonable allowance for salaries or other compensation for personal services actually rendered;

I.R.C. § 162(a)(1). As the language of the statute indicates, "[t]he test of deductibility in the case of compensation payments is <u>whether they are reasonable and are in fact payments purely for services</u>." Treas. Reg. § 1.162-7 (emphasis added).

The regulations provide that "[a]mounts paid or accrued within the taxable year for. . . a sickness, accident, hospitalization, medical expense . . . or similar benefit plan, are deductible under section 162(a) if they are ordinary and necessary expenses of the trade or business." Treas. Reg. § 1.162-10(a).[6]

---

[6]In addition to the employer being able to deduct such benefit plan payments, they are not includable in the taxable income of the employee. Specifically, employer provided insurance coverage is not included pursuant to I.R.C. § 106(a), and amounts paid directly or indirectly to the employee as reimbursement for expenses incurred by the employee for his or her care or the care of the employee's spouse or dependents, are not includable pursuant to I.R.C. § 105(b). The exclusion from income of the amounts here in question is not in issue.

The application of those provisions to farming and other small business sole proprietorships where one spouse is employed by the other in a bona fide employment relationship has long been acknowledged by the Internal Revenue Service. Thus, Rev. Rul. 71-588, 1971-2 C.B. 91 (1971) provides as follows:[7]

> Amounts reimbursed under an accident and health plan covering all bona fide employees, <u>including the owner's wife</u>, and their families are not includable in the employee's gross income and are deductible by the owner as business expenses.
>
> The taxpayer operated a business as a sole proprietorship with several bona fide fulltime employees including his wife. The taxpayer had an accident and health plan covering all employees and their families. During 1970 two employees, including the wife, incurred expenses for medical care for themselves, their spouses, and their children, and were reimbursed pursuant to the plan. The reimbursed amounts qualified both as amounts received under an accident or health plan for employees within the meaning of section 105(e) of the Internal Revenue Code of 1954 and as amounts described in section 105(b) of the Code.
>
> *Held*, the reimbursed amounts received by the employees are not includable in their gross income pursuant to section 105(b) of the Code and <u>these amounts are deductible by the taxpayer as a business expense under section 162(a) of the Code</u>.

<u>Id.</u> (emphasis added).[8]

---

[7]While revenue rulings are not binding on either the Tax Court or this court, we are entitled to give them consideration and "the public generally has the right to rely on positions taken by the Commissioner in revenue rulings," <u>Alumax Inc. v. Comm'r.</u>, 109 T.C. 133, 163 n.12 (1997), aff'd, 165 F.3d 822 (11th Cir. 1999); <u>Pub. Emps. Ret. Bd. v. Shalala</u>, 153 F.3d 1160, 1163 (10th Cir. 1998).

[8]Some have attempted to distinguish Rev. Rul. 71-588 from cases like the one before us on the ground that two employees in addition to the employee-spouse were included in the benefit plan. <u>See, e.g.</u>, <u>Eyler v. Comm'r.</u>, T.C.M.

(continued...)

Pursuant to the Commissioner's ruling, arrangements such as the one before us have been widely marketed by tax professionals and organizations providing business management, forms, tips and related matters, leading, inevitably, to challenges by the Commissioner and cases in the Tax Court. There are six decisions out of the Tax Court directly relevant to this case. All involve spouse employees and medical benefit plans, and business expense deductions on either Schedule F or Schedule C. Indeed, four of the decisions involve AgriPlan/BizPlan tax benefit packages identical to the one before us. And, three of the decisions involve sole proprietor farming operations. While such cases are, admittedly, governed by the "facts and circumstances" principle, and are Memorandum Opinions, the positions taken by the Commissioner in those cases are enlightening. The point here is that not one of those cases materially assists the Commissioner's position, adopted by the Tax Court, in this case.

Frahm v. Comm'r., T.C.M. 2007-351, 2007 WL 4179352 (Nov. 27, 2007), is directly on point. That case involved a sole proprietorship farming business in which the husband employed his wife using an AgriPlan/BizPlan tax package, and reimbursed her for amounts paid for the cost of health insurance premiums,

---

[8](...continued)
2007-350, 2007 WL 4179355, at *3 n.14 (Nov. 27, 2007). We do not see the ruling as being dependent on the number of employees included in the benefit plan, and no pronouncement from the Internal Revenue Service has indicated otherwise. To the contrary, the ruling has been widely applied to single employee-spouse situations.

deducting those amounts on Schedule F as payments pursuant to a benefit plan.

Mrs. Frahm, the only employee, did farm work similar to that performed by Mrs.

Shellito, and had apparently done so for years prior to the years in which she was

designated as an employee. The funds in question were drawn on the couple's

joint checking account by way of checks issued by Mr. Frahm to Mrs. Frahm.

The health insurance premiums were largely paid by Mrs. Frahm from her

individual checking account. Some were paid from the joint checking account.

Significantly, the Commissioner conceded that Mrs. Frahm was

Mr. Frahm's employee for purposes of the health plan reimbursement deduction,

did not dispute the bona fides of payments originating from the couple's joint

checking account, or funds flowing thereafter from that account into Mrs.

Frahm's individual checking account, and did not even attempt to dispute the

deductibility of the noninsurance medical expenses paid by Mrs. Frahm. Id. at

*7-8, n.25. He did dispute payments made indirectly by Mr. Frahm. The Tax

Court ruled in favor of the Frahms. The Commissioner's concessions in Frahm,

and the Tax Court's ruling, are irreconcilable with the case before us.

Speltz v. Comm'r., T.C. Summ. Op. 2006-25, 2006 WL 334296 (Feb. 14,

2006), upheld the deductibility of healthcare reimbursement payments to a

husband-employee who worked part time in his wife's day care business

conducted in their home. In reaching its decision in that case, the Tax Court

applied a common law agency test to determine whether an employer-employee

relationship existed, and it placed the burden on the Commissioner to prove that the husband was not a bona fide employee. Significantly, the court emphasized that the taxpayers had substantiated the services provided, including keeping records with respect to the hours spent in performing those services. Speltz is significant also for the fact that the only compensation paid to Mr. Speltz was the medical reimbursement benefit. There was no dispute that such a benefit constituted compensation, and the court found it to be a reasonable amount.

In the case before us, there is evidence of similarly careful recordkeeping. And, Mrs. Shellito was paid in two ways: a wage of $100 per month plus (as in Speltz) substantial medical reimbursement benefits amounting to more than $20,000 in 2002. The Commissioner does not seriously dispute Mrs. Shellito's total claimed compensation package as being adequate in the farm work market for the work performed.

Francis v. Comm'r., T.C.M. 2007-33, 2007 WL 424601 (Feb. 8, 2007), likewise involved a sole proprietorship farm, with an employee spouse, and the adoption of an AgriPlan/BizPlan package. In Francis, the Commissioner did question the spouse's status as an employee, referring to her uncompensated services for many years prior to executing an employment agreement. But the Commissioner did not invoke the sham transaction, substance over form, economic substance or compensation theories. Rather, the Commissioner's primary argument was that no evidence existed showing that Mrs. Francis actually

did the work claimed. For instance, she failed to document the number of hours worked. The Tax Court agreed with that argument and found it unnecessary to decide whether Mrs. Francis was a bona fide employee. Such an approach is inconsistent with the Commissioner's central approach in this case and inconsistent with the facts, since in the case before us, Mrs. Shellito, in fact, documented her hours and testified without any serious challenge with respect to her services.

Albers v. Comm'r., T.C.M. 2007-144, 2007 WL 1649090 (June 7, 2007), likewise involved a sole proprietorship farm, wife-employee, AgriPlan/BizPlan package, and claimed medical expense reimbursement deductions on Schedule F. The Commissioner did not challenge the bona fides of the employment agreement, benefit plan, or other matters adopted pursuant to the AgriPlan/BizPlan; nor did he seek to pursue a substance over form or economic substance theory, or any position with respect to the fact that a joint checking account was involved. Rather, the Commissioner's position was a straightforward challenge to the payment or reimbursement of anything by or on behalf of Mrs. Albers with respect to healthcare expenses. The Tax Court held that there was no credible evidence that Mr. Albers paid anything at all, directly or indirectly, to Mrs. Albers pursuant to the medical reimbursement plan. The arguments advanced by the Commissioner in the case before us were not advanced in Albers, and the evidence clearly establishes the payment by Mrs. Shellito in the case before us of

the health-related expenses in question, and her reimbursement for those payments.

Snorek v. Comm'r., T.C.M. 2007-34, 2007 WL 424536 (Feb. 8, 2007), likewise involved an AgriPlan/BizPlan health insurance and unreimbursed health expense deduction package; but the business involved was a sole proprietorship upholstery business, and the claimed medical expense reimbursements were listed on Schedule C (Profit or Loss from Business). As in Albers, and other cases, the Commissioner did not attack the claimed spousal employment arrangement (there involving a husband-employee) on substance over form or sham transaction, or similar grounds, nor did the Commissioner attempt to trace funds back to a joint checking account, or trace the history of the claimed spousal involvement in the business. Rather, the claim was simply that the taxpayers did not produce evidence that Mr. Snorek paid anything or was reimbursed for anything. The Tax Court noted: "Petitioners did not, for example, introduce receipts or canceled checks showing that Mr. Snorek paid the health insurance premiums for Mrs. Snorek. Petitioners also did not introduce the premium statement or policy itself, which may have identified the party responsible for making the premium payments for the insured." Id. at *2. Unlike Snorek, the record before us abounds with documentary evidence and proof of billing and payments which, according to the implication arising from the reasoning in Snorek, would lead to a decision for the taxpayers in the instant case.

Finally, in Haeder v. Comm'r, T.C.M. 2001-7, 2001 WL 40100 (Jan. 17, 2001), the Tax Court upheld a disallowance of business expense deductions for medical benefit reimbursements from the taxpayer to his wife on the ground that she not only did not perform any work in the taxpayer's business, but that the taxpayer did not have any business. Furthermore, the Tax Court relied on the fact that no W-2 was issued, no payments were made directly to the purported employee-wife and there was no documentation of either the work purportedly performed or the time spent performing services, implying, apparently, a favorable outcome for the taxpayer where there is proof of such matters. Such is the case before us.

We have discussed the relevant cases in some detail because it is important to show the inconsistencies in the Commissioner's overall position in these cases, as well as the fact that the Shellitos' case, on its face, is benefitted by the decided cases, and is not harmed by the Commissioner's position taken in any of them.[9] Furthermore, the cases highlight the fact that in tax law form often merges with

---

[9]The government contends that our case of Folsom v. O'Neal, 250 F.2d 946 (10th Cir. 1957), supports their position. Aple's Br. at 31. We disagree. Folsom involved an attempt by an individual to qualify for Social Security payments. The Bureau of Old-Age and Survivors Insurance, Social Security Administration determined that the claim was not well founded because the applicant had not demonstrated that he had been employed. After further proceedings, the case made its way to this court, where we emphasized that "[t]he nature and extent of judicial review in a proceeding of this kind is limited in scope," id. at 947, and under that standard, upheld the agency's decision. Furthermore, our decision was both brief and lacking in any developed reasoning with respect to the issue presented. Under these circumstances, Folsom is of little benefit here.

substance by way of requirements for documentation and proof of a specific structure (e.g., employment agreement, documentation of hours worked, a written plan with a third-party administrator, testimony as to work performed, canceled checks showing payment by the husband to the wife, separate bank accounts, documented payments by the wife out of her account for medical expense purposes, and so on).

## C.

Faced in the case before us with the fact that the Shellitos crossed all of the T's and dotted all of the I's with respect to an employment relationship, the Commissioner has retrenched, arguing, really for the first time in these cases, that Mrs. Shellito's claimed compensation was illusory because (1) her payment of medical expenses simply relieved Mr. Shellito of his obligation under Kansas law to pay for her medical expenses (the doctrine of necessaries); (2) she obtained no economic benefit from checks written to her by her husband out of their joint checking account in which she was presumed to have an equal ownership interest; and, in effect, that medical expenses were still being paid out of the Shellitos' joint checking account even though the funds passed through Mrs. Shellito's individual account; and reasoning from these propositions that, as the Tax Court stated: "We conclude that Mrs. Shellito received no remuneration under the purported employment arrangement and consequently during the years at issue, as

-18-

in the preceding years, there was no bona fide employment relationship." <u>Shellito</u> <u>v. Comm'r.</u>, T.C.M. 2010-41, 2010 WL 727985, at *6 (Mar. 3, 2010). Then, leveraging that conclusion, the court stated that there being no bona fide employment relationship, the Shellitos' employment agreement failed for lack of economic substance. <u>Id.</u> ("the purported employment agreement was a mere formality.")

<strong>1.</strong>

It was error for the district court to rely on the Kansas doctrine of necessaries. The Kansas doctrine of necessaries applies equally to husbands and wives and imposes upon each a duty to provide for the other's necessities, including medical services. <u>See</u> <u>St. Francis Reg'l Med. Ctr., Inc. v. Bowles</u>, 836 P.2d 1123, 1125-28 (Kan. 1992). Thus, the duty only comes into force to the extent that one of the spouses is unable to provide for themselves. Here, Mrs. Shellito's argument is that, by way of compensation received from her alleged employment by her husband's farming business, Mrs. Shellito was able to provide for her own medical services.

It is puzzling that the Commissioner would even attempt to advance the argument that Mrs. Shellito's payments should be disregarded because they convert a legal support obligation into a deductible expense. That position has not been adopted by the Commissioner since it would punish a taxpayer for

employing a spouse or family member.  Revenue Ruling 71-588, 1971-2 C.B. 91, 1971 WL 26635 (1971), and Rev. Rul. 59-110, 1959-1 C.B. 45, 1959 WL 12187 (1959) (Employee-Dependent), were both based on determinations that an obligation to support does not preclude favored tax treatment in their respective situations.  And, although Rev. Rul. 59-110 was superseded by Rev. Rul. 73-393, 1973-2 C.B. 33, 1973 WL 33072, the general conclusion has remained the same: "[F]or wages paid to the child for services actually performed, the fact that there may be a legal obligation to support the child is not determinative of the deductibility of such wages as a business expense." Id.  The same reasoning applies to a spouse.

The proposition that the deductibility of medical reimbursement payments depends on whether or not medical expenses might be paid from another source, even if that source has an obligation to pay, is also not supported by any case law, and it would result in inconsistent treatment of benefit plans and a disincentive to employers to provide benefits.  Based on the Service's own prior pronouncements, it would be surprising if the Commissioner now endorses the "support obligation" argument as a litigating position in these types of cases. Accordingly, in analyzing whether Mrs. Shellito received compensation, any obligation arising from the Kansas common law doctrine of necessaries must be excluded.

**2.**

Likewise, the Tax Court's disqualification of any amounts received by Mrs. Shellito as compensation because they originated from the couple's joint checking account, is flawed. If the use of a single joint account disqualifies spousal employment, it is strange that this threshold bar has not been used in the decided cases. Significantly, none of the cases referred to above relied on the existence and use of joint checking accounts, as such, as a disqualifying factor. Whether the joint account-compensation disqualifier appears in the I.R.S. audit guides, internal memoranda or other materials is at least problematic if for no other reason than its omission from Rev. Rul. 71-588, as well as the case law. Furthermore, a separate account requirement would simply invite another structural layer: here, a separate account for the business of the farm, from which funds would simply be transferred to the general joint account and/or to Mrs. Shellito's separate account (plus, the business account would probably be in joint tenancy anyway because the business relied on Mrs. Shellito to do the bookkeeping).

Finally, the argument that Mrs. Shellito owned half of the funds in the joint checking account does not withstand scrutiny in any event. First, it does not address the purported other half of payments she would have received (hard to do since the funds are fungible). More to the point, this argument is based on an improper implicit finding that there was no proof presented to suggest that the

Shellitos did not equally own the funds in their joint checking account. As the Shellitos point out, the Kansas Supreme Court has held that "the presumption of equal ownership can be rebutted with evidence regarding the owner's relative contribution to the asset and donative intent." Brewer v. Schalansky, 102 P.3d 1145, 1150 (Kan. 2004). There is evidence in the record to rebut the presumption of equal ownership. Mr. Shellito testified that the joint account was the account that was his business account, used for all the business income and expenses, and that it was a joint account because the bank required Mrs. Shellito's name to be on it as well. Aplt. App. at 265. The inequality of contributions to the account is readily apparent from the fact that the family's income came from the sole-proprietorship farming business.

In addition, the argument that Mrs. Shellito received no economic benefit because her financial position with a separate account was the same as without it ignores the reality of spousal employment. Combined gross income would obviously not change. Employment of a spouse in a small business is done to avoid decreasing the couple's income, which would result from paying an unrelated hired hand. And, to narrow these kinds of cases to situations where the employed spouse is setting up a completely separate asset portfolio with her separate account does not find a supporting requirement in the reported cases.

-22-

**3.**

The Tax Court also invoked the substance over form doctrine, citing <u>True</u> <u>v. United States</u>, 190 F.3d 1165 (10th Cir. 1999). However, the court's reliance on that doctrine was based largely on its finding that Mrs. Shellito did not receive any compensation—a subject we have addressed above. While the court's reasoning also included the fact that Mrs. Shellito worked for no compensation prior to 2001-2002, the substance over form principle cannot support the Tax Court's conclusion as its decision now stands. On remand, the Tax Court is not required to refrain from the use of doctrines such as substance over form, economic substance, and so forth, to decide this case, provided the doctrine selected is appropriate for the purpose, and supported by the record. <u>See</u> <u>Rogers</u> <u>v. United States</u>, 281 F.3d 1108, 1113-19 (10th Cir. 2002) (discussing these various doctrines). In this regard, however, it is important to note that the Commissioner did not invoke such a doctrine in any of the cases discussed above. Why such an approach should be adopted now is problematic.

**D.**

For the reasons we have stated, we are compelled to remand this case to the Tax Court for further consideration. On remand, the Tax Court should begin its analysis of whether or not Mrs. Shellito was a bona fide employee by applying the common law agency doctrine. <u>See generally</u> <u>Zinn v. McKune</u>, 143 F.3d 1353,

1357 (10th Cir. 1998) (the definition of employee "should be fleshed out by applying common-law agency principles to the facts and circumstances surrounding the working relationship of the parties" (Title VII case)); Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 322-27 (1992) (differentiating between employee and independent contractor); Clackamas Gastroenterology Assoc., P.C. v. Wells, 538 U.S. 440, 452 (distinguishing between employee and partner, shareholder, and director); Marvel, 719 F.2d at 1514 (determining whether an individual is an employee for federal employment tax purposes); Hockett, 109 F.3d at 1526; Speltz, 2006 WL 334296, at*5-6 (determination of spouse as employee); Herr v. Heiman, 75 F.3d 1509 (10th Cir. 1996); Carter v. Central States, Southeast and Southwest Areas Pension Plan, 656 F.2d 575 (10th Cir. 1981) (pension plan); Rev. Rul. 87-41, 1987-1 D.B. 296, 1987 WL 419174 (1987); Treas. Reg. §§ 31.3121(d)-1, 31.3306(i)-1, and 31-3401(c)-1; Restatement (Second) of Agency, §§ 220(1) and (2).[10]

---

[10]The Commissioner argues, and the Tax Court found, that the common-law tests relating to employment do not apply because Mrs. Shellito was not compensated and therefore she was not employed at all, citing O'Connor v. Davis, 126 F.3d 112 (2d Cir. 1997), Graves v. Women's Professional Rodeo Ass'n, Inc., 907 F.2d 71 (8th Cir. 1990), and McGuinness v. Univ. of N.M. Sch. of Med., 170 F.3d 974 (10th Cir. 1998). Those cases hold that the receipt of compensation by the putative employee is an essential condition to the existence of an employer-employee relationship. However, that proposition begs the question here. In the three cases cited, it was a given that no compensation was paid. Here, the question of compensation is a central issue. The resolution of that question in favor of the Shellitos renders the three cited cases irrelevant.

The touchstone is whether the person for whom the services are performed has the right to direct and control the means and manner in which the work shall be done and the result to be accomplished.  However, the common law test for describing the conventional master-servant relationship contains no shorthand formula or magic phrase that can be applied to find the answer.  All of the incidents of the relationship must be assessed and weighed  with no one factor being decisive.  See Nationwide, 503 U.S. at 324.

The relevant factors to consider in a case like this would not, of course, replicate those used to analyze an employee-independent contractor relationship, for instance.  Instead, the factors should concentrate on such things as the right of control, ownership or investment in the business and its assets, risk and reward, financial control, the parties' intent, including the existence of a written employment agreement,[11] work history, nature, extent and documentation of work performed, tax and other formalities relating to worker status, and similar factors.

The common-law test for determining whether Mrs. Shellito qualifies as an employee is not conclusive.  Rather, it is highly relevant to, and provides context for, the determination of the overarching statutory requirement governing this case:  whether or not the amounts paid to Mrs. Shellito were "compensation for personal services actually rendered."  I.R.C. § 162(a)(1).  (See Treas. Reg.

_____

[11]Of course "the mere existence of a document styled 'employment agreement' [does not] lead inexorably to the conclusion that either party is an employee."  Clackamas, 538 U.S. at 450.

-25-

§ 1.162-7: "[t]he test of deductibility in the case of compensation payments is whether they are reasonable and are in fact payments purely for services.") The controlling nature of this requirement is highlighted by the fact that the Shellitos claim the health care reimbursements at issue constituted compensation. The determination in question necessarily ties into deductibility as a business expense under § 162(a).[12]

## CONCLUSION

Because of the determination set forth above, it is necessary to remand this case to the Tax Court for further consideration, which will entail findings of fact that we cannot make here. We do so reluctantly, in view of the fact that this case has been pending either administratively or before the courts for an inordinate period of time, burdening the taxpayers with uncertainty with respect to their affairs.

For the reasons stated above, the decision of the Tax Court is VACATED and the case is REMANDED for reconsideration in accordance with this opinion.

---

[12]The Tax Court is entitled to view the arrangement in question with a heightened level of skepticism in determining whether payments were made on account of the employer-employee relationship. See True, 190 F.3d at 1174, n.6. However, at a certain level of skepticism the Tax Court may very well be required to make credibility findings with respect to the testimony in the record.

On remand we urge the Tax Court to reconsider assigning the burden of proof in this case in accordance with I.R.C. § 7491(a)(2).

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge