No. 115,028

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ST. CATHERINE HOSPITAL, dba
ST. CATHERINE HOSPITAL ANESTHESIA SERVICES,
*Appellee*,

v.

OVIDIO ALVAREZ,
*Appellee*,

and

BIANCA ALVAREZ,
*Appellant.*

SYLLABUS BY THE COURT

Kansas recognizes the doctrine of necessaries, under which a spouse can be held liable when the other spouse obtains necessary items, like food or medical care, on credit. When the spouses have separated before credit was extended, the creditor must show that it extended credit based upon the creditworthiness of the absent spouse (*i.e.*, the one not receiving the goods or services) in order to collect payment under this doctrine from the absent spouse.

Appeal from Finney District Court; CHRISTOPHER D. SANDERS, judge. Opinion filed October 28, 2016. Reversed and remanded with directions.

*Timothy R. Woods*, of Kansas Legal Services, for appellant.

*Amber M. Brehm*, of Law Office of Amber M. Brehm, of Wichita, for appellee.

Before LEBEN, P.J., PIERRON and MCANANY, JJ.

LEBEN, J.: After 17 years of marriage, Ovidio Alvarez left his wife to move in with another woman. More than 1 year later, Ovidio was injured in a car crash and treated at St. Catherine Hospital in Garden City. Ovidio, apparently uninsured, left a bill of $6,456 unpaid.

So the hospital sued Ovidio's wife, Bianca, who had by then divorced Ovidio—but who had still been married to him when he received the treatment. The hospital sued under what's known as the "doctrine of necessaries." Under it, a spouse can be held liable when the other spouse obtains necessary items, like food or medical care, on credit. The district court granted summary judgment in favor of the hospital against Bianca.

But the Kansas case recognizing the doctrine of necessaries, *Harttmann v. Tegart*, 12 Kan. 177, 1873 WL 591 (1873), had a requirement the hospital has not met, at least in the summary-judgment papers. *Harttmann* was decided at a time when women generally did not own property in their own names, even though Kansas had, virtually at its founding, recognized a woman's right to do so: Kansas recognized a woman's right to own property in the state constitution and adopted a Married Women's Property Act in 1868. See Kan. Const. art. 15, § 6 (providing that the Kansas Legislature "shall provide for the protection of the rights of women, in acquiring and possessing property"); G.S. 1868, ch. 62; see also K.S.A. 2015 Supp. 23-2601 (now applying to both husbands and wives); 2 Elrod, Kansas Law & Practice, Kansas Family Law § 10:1 (2015). The norm when *Harttmann* was decided in 1873 was that a married man, who had a legal duty to support his family, provided the family's income. See *Harttmann*, 12 Kan. at 179-80 (noting "the legal as well as moral duty of every husband to see that his wife is furnished, or has the means of furnishing herself, with everything necessary and suitable for a person in their station and condition").

Consistent with the wife's lack of financial resources in her own name and the husband's duty to support his family, the doctrine of necessaries allowed a married

woman to obtain necessary items on her husband's credit. But one of the requirements for holding the husband responsible when, as here, the parties were separated was that the party giving credit to the wife have "[given] the credit originally to the husband." 12 Kan. at 180. Here, the hospital has not shown that its decision to treat Ovidio for his injuries—thus extending credit for the medical services provided—was in any way based on the hospital's evaluation of Bianca's creditworthiness. We therefore conclude that the district court should not have granted summary judgment to the hospital.

Let's briefly review the factual circumstances. Ovidio and Bianca were married on May 28, 1995. They separated in November 2012 when Ovidio moved in with another woman. According to Bianca, their separation was due both to Ovidio's infidelity and to his abuse of drugs and alcohol. They were divorced in October 2014.

On February 23, 2014, Ovidio was badly injured in a car accident. (His girlfriend was with him and was also injured.) Ovidio was taken to St. Catherine Hospital, where he was treated from February 23 to March 24. He was then transferred to Wesley Medical Center in Wichita for further treatment of internal injuries, including to his abdomen and colon. The treating physician in Garden City signed off on a note expressing "regret" at sending "such a difficult case" on to Wichita for further treatment but said that St. Catherine's had "exhausted our resources and our expertise."

St. Catherine's bill of $6,456 for the medical services went unpaid.

In 2015, the hospital sued Bianca for the unpaid medical expenses. The hospital contended that she was liable under the doctrine of necessaries, and the district court agreed, granting summary judgment in the hospital's favor.

On appeal, we apply the same standard the trial court is required to apply on a motion for summary judgment. Summary judgment is proper only where the motion,

3

together with the evidence submitted by the parties, shows that there is no genuine issue as to any significant fact and the moving party is entitled to judgment as a matter of law. *Lehman v. City of Topeka*, 50 Kan. App. 2d 115, 118, 323 P.3d 867 (2014).

Neither party disputes any material fact that the other has presented on the hospital's motion for summary judgment. The question is simply whether the evidence presented by the hospital meets the requirements to impose the doctrine of necessaries, making Bianca responsible for the extension of credit for medical services provided to Ovidio. (For our purposes, "necessaries," a term coined in the law in the 14th century, essentially means the same thing as "necessities." See Black's Law Dictionary 1192 [10th ed. 2014]; Garner's Dictionary of Legal Usage 598 [3d ed. 2011].)

Both parties cite two Kansas Supreme Court cases, one from 1873 and one from 1992, for guidance on the doctrine of necessaries as applied in Kansas. See *Harttmann*, 12 Kan. 177; *St. Francis Regional Med. Center, Inc. v. Bowles*, 251 Kan. 334, 836 P.2d 1123 (1992). *Harttmann* was adopted at a time when the doctrine only applied in one direction—making a husband liable for necessary items furnished to his wife on credit. 12 Kan. at 180-81. *Bowles*, decided more than a century after *Harttmann*, held that equal-protection principles required that the doctrine be applied equally so that wives also could be responsible for necessaries provided on credit to their husbands. 251 Kan. at 340-41.

*Harttmann* set out the elements that the parties must prove for a court to apply the doctrine.

The court first established a rule for the normal situation in which husband and wife are living together. In such cases, it was presumed as of 1873 that the wife could act as the husband's agent and rely on his credit:

4

"It is certainly the legal as well as moral duty of every husband to see that his wife is furnished, or has the means of furnishing herself, with everything necessary and suitable for a person in their station and condition. For this reason, it is always conclusively presumed that a wife who lives and cohabits with her husband has an agency from him, and upon his credit, to procure everything that is necessary for herself or family, unless the person from whom she seeks to obtain such necessaries has actual notice that she has no such agency in fact; and in such a case it is presumed *prima facie* that what she procures are necessaries." 12 Kan. at 179-80.

But the *Harttmann* court faced an additional question: What happens when the wife has abandoned the husband? Does the husband still have to pay debts incurred by the wife for necessaries? In that case, said the court, the creditor has the burden to prove five propositions, *including, as the last of the five, that the credit was extended based on the husband's creditworthiness*:

"In such a case the party furnishing the necessaries, and who wishes to make the husband liable therefor, must show—*First,* that he *furnished* the necessaries; *second,* that they *were necessaries; third,* that her husband *failed or refused* to furnish them, or to furnish means whereby she could procure them, and that she had no sufficient means of her own whereby to procure them; *fourth,* that the separation was for a *justifiable cause* on her part; *fifth,* and generally, that he gave the credit originally to the husband." 12 Kan. at 180.

Under *Harttmann*, if the wife left without justification, no longer providing her services to the household and no longer affording herself of the home being provided to her, she was no longer entitled to the husband's support under the doctrine of necessaries. 12 Kan. at 181.

The hospital focuses on one more caveat addressed by the *Harttmann* court. After providing the five-part test, the court added that if the creditor had had prior dealings with the family—and the creditor didn't know the parties were separated—then the creditor

could "trust the wife as usual upon the husband's credit until he receives actual notice of the separation." 12 Kan. at 180. The hospital argues that since it had previously dealt with the Alvarez family—Ovidio had received treatment in 1995, and hospital records listed Bianca as his wife—they could rely on Bianca's credit to treat Ovidio when he showed up injured in 2014.

We don't agree with the hospital's reading of *Harttmann*. The language the hospital relies upon is not a stand-alone rule but logically relates only to the fourth element in the *Harttmann* test: proof that the separation was for a justifiable cause. If the creditor didn't know about the separation—and had previously been dealing with the family—it would logically be excused from having to prove that the separation had been justified and could "trust the wife as usual upon the husband's credit." 12 Kan. at 180. If the creditor didn't know about the separation at all, it would have no cause to ask about it.

But the fifth element has no apparent relationship with whether the creditor knew the parties had separated. And the *Harttmann* court said that the fifth element applied "generally." 12 Kan. at 180. There simply is no reason to apply the doctrine of necessaries at all unless the creditor has advanced something of value based on the creditworthiness of the absent spouse. Under Kansas law, as stated in *Harttmann* and not modified in *Bowles*, that's one of the elements a creditor must prove to recover under the doctrine, at least in a case in which the husband and wife have separated.

So did the hospital provide such evidence? No. The affidavit it submitted from its patient-accounts supervisor, Sarah Miranda, made no such claim. The hospital did not even present evidence that Bianca had paid the previous hospital bill when services were provided to Ovidio in 1995, let alone evidence that it relied on Bianca's creditworthiness when providing services in 2014. We therefore conclude that the hospital's motion for summary judgment should not have been granted.

It seems doubtful that the hospital could present evidence that it relied on Bianca's credit when it decided to treat Ovidio: Hospitals that participate in Medicare have an obligation under the federal Emergency Treatment and Labor Act to treat any badly injured person who comes to the hospital's emergency room, regardless of the person's ability to pay. See 42 U.S.C. § 1395dd (2012). Even so, Bianca, the defendant in this lawsuit, did not file a cross-motion for summary judgment claiming that summary judgment should be granted in her favor because the hospital could not meet the fifth requirement set out in *Harttmann* for the application of the doctrine of necessaries. Had she done so, that would have triggered a procedural requirement that the hospital provide such evidence if it wished to avoid summary judgment against it. See *Ney v. Farm Bureau Life Ins. Co.*, 51 Kan. App. 2d 562, 566, 350 P.3d 1126 (2015), *rev. denied* 303 Kan. 1078 (2016). As the case has arrived before us on appeal, however, the hospital has not yet been required to present such evidence to preserve the ability to pursue its claim against Bianca. Accordingly, we will send the matter back to the district court for further proceedings.

The hospital does argue that Kansas courts should no longer follow *Harttmann* because the state now allows no-fault divorce (unheard of in 1873) and generally doesn't factor fault into the determination of financial obligations in a divorce. See K.S.A. 23-2701; *In re Marriage of Sommers*, 246 Kan. 652, Syl. ¶ 2, 792 P.2d 1005 (1990). But the divorce statute still allows a divorce to be granted on fault grounds, K.S.A. 23-2701(a)(2), and we do not believe that the way property is to be divided between spouses in a divorce action automatically applies to an action brought by a creditor against a spouse who had not agreed to pay that creditor.

The district court's grant of summary judgment to the hospital is reversed, and this case is remanded to the district court for further proceedings consistent with this opinion.